That part of the decree appealed from is reversed.

Nourse, P. J., and Dooling, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 15, 1946.

[Civ. No. 13025. First Dist., Div. Two. June 17, 1946.]

CHARLES H. SHIFFLETTE et al., Respondents, v. WALKUP DRAYAGE AND WAREHOUSE COMPANY (a Corporation) et al., Appellants.

Hadsell, Sweet & Ingalls for Appellants.

Elmer P. Delany and James A. Himmel for Respondents.

NOURSE, P. J.—The plaintiffs, Charles H. and Harriette Shifflette, brought this action against Walkup Drayage and Warehouse Company and its employee, Charles Hameister, for damages resulting from a collision of motor vehicles on the city streets of San Francisco. Hameister, the driver of defendant's truck, died prior to the trial of the case from causes not connected with the collision and the suit abated as to him. The jury unanimously awarded plaintiffs a verdict in the sum of $5,000 and the court entered a judgment thereon. The defendant's motion for a new trial was denied and the company appeals from the judgment.

The collision occurred at the intersection of Ninth and Bryant Streets where there are four automatic signals for the control of traffic. Ninth Street runs in a general north and south direction while Bryant Street, upon which there are two sets of streetcar tracks, runs east and west. A few minutes before 5 o'clock on the afternoon of February 20, 1945, Charles H. Shifflette was driving his automobile in a southerly direction along Ninth Street. His wife, Harriette, coplaintiff herein, accompanied him, riding in the front seat of the vehicle. Viewing their testimony in the light most favorable to them as respondents herein it appeared that they approached the intersection with Bryant Street at a speed which they said was from twelve to fifteen miles per hour. Both at a distance of fifty feet to the north and at the time that the plaintiffs entered the intersection the traffic signal appeared to show "Go" in their favor. As they started to cross Bryant Street the plaintiffs noticed automobiles stopped to their left, and to their right they saw a streetcar on the eastbound tracks which was being switched back. At about the time that the rear wheels of the automobile were crossing the southernmost streetcar track defendant's truck, driven by Hameister in an easterly direction along Bryant Street, came out from alongside the standing streetcar and collided with plaintiffs' automobile. The front end of the truck hit the car in the center of the right side carrying it approximately twenty-five feet east.

According to the evidence offered by plaintiffs the Ninth Street signals governing plaintiffs' movement read "Go" at the time they started to cross Bryant Street, but there is a conflict as to what the Bryant Street signals showed when the defendant's driver entered the intersection. The plaintiffs did not notice the Bryant Street signals and the truck driver's

deposition was not admitted into evidence because it had not been signed by him prior to his death. Two witnesses who had been working on an automobile on Bryant Street at the time of the collision testified that the signal showed "Stop." The streetcar conductor and two witnesses who looked out of a second-story office window when they heard the collision testified that the Bryant Street Signal read "Go." One of these witnesses stated that the signals had been out of order for several weeks. A truck driver who was proceeding west along Bryant Street testified that he entered the intersection pursuant to a "Go" signal in his favor and that the accident occurred just after he had passed the rear of plaintiffs' automobile. A city electrician who went to the corner that afternoon in response to a complaint testified that he watched the signals for a period of from twenty minutes to a half hour during which time they worked correctly. A police officer who was called to the intersection to investigate an accident stated at 4:45 p. m. the signals were operating in a normal manner but that at 5:09 p. m. he noticed that the signals were out of order.

The main portion of the appellant's attack on the judgment below concerns the admission of certain evidence showing that its truck driver did not have an operator's license at the time of the accident and that the license last held by Hameister was limited. The court admitted the following evidence over appellant's objections and subject to a showing of knowledge on the part of the company. Hameister did not have a license to drive a truck at the time of the accident; his previous operator's license, which had expired in the early part of 1942 and had not been renewed, was qualified and required him to wear adequate glasses because of inferior vision rated at 20/200. The evidence also showed that Hameister had not worn glasses for several months prior to the collision having broken them in 1944 and that he used a small glass for the purpose of reading waybills. Mrs. Shifflette testified that immediately after the accident the truck driver was not wearing glasses.

On the instant appeal the appellant renews its objection to the admission of this evidence and contends that the trial court committed error in not requiring the respondents to prove that the company had knowledge of these conditions. Section 334 of the Vehicle Code prohibits the employment of any person as a chauffeur of a motor vehicle who is not

then duly licensed to drive. Section 335 of the Vehicle Code provides as follows: "No person shall knowingly permit or authorize the driving of a motor vehicle, owned by him or under his control, upon the highways by any person whether as operator or chauffeur unless such person is then duly licensed hereunder so to drive." These sections of the code and the sections requiring a test of the competency as well as the mental and physical fitness of prospective operators of motor vehicles (Veh. Code, § 268) were undoubtedly designed for the protection of the public upon the streets and highways. (*Owens* v. *Carmichael's U-Drive Autos, Inc.*, 116 Cal. App. 348, 352 [2 P.2d 580].)

In order to establish a violation of these sections of the Vehicle Code and to show negligence on the part of appellant respondents alleged in their amended and supplementary complaint that the company "knew, or in the exercise of ordinary care should have known" that its truck driver was not competent nor licensed to operate a motor vehicle and that the former license held by Hameister was restricted to such times as he was wearing adequate glasses. Respondents were entitled to support these allegations in their complaint by the introduction of evidence on the particular subject and they could not be expected to present the entire matter simultaneously.

The respondents' evidence established that the truck driver did not have an operator's license and that his eyesight was defective. In accordance with their allegations respondents then attempted to prove that the company had knowledge of these facts. Several of appellant's officers were called as witnesses. The vice president in charge of operations was questioned relative to his knowledge of the restriction on Hameister's previous license, the investigation made to determine if the drivers held licenses and whether Hameister wore glasses. He explained that their drivers were sent to them by the union and that they accepted those who presented the union order without any further inquiry. The company's dispatcher was questioned relative to his connection with the truck drivers as to whether Hameister wore glasses and the manner in which the employee read his freight bills. This examination of these witnesses was an attempt by the respondents to establish knowledge on the part of appellant which was a question of fact properly submitted to the jury. (Code Civ. Proc., § 2101; *Ward Land etc. Co.* v.

*Mapes,* 147 Cal. 747, 752 [82 P. 426].) Though respondents were unable to prove by any direct evidence the requisite knowledge of appellant to establish the issue, that fact does not determine that it was error to admit the evidence at the time it was offered. And we cannot now say that it was reversible error since it does not appear that the testimony was elicited in bad faith.

■ The evidence of negligence submitted to the jury in this case including the testimony of plaintiffs, the testimony of the two witnesses who stated that the Bryant Street signal showed "Stop," and the testimony of the city electrical worker that the signals were working correctly was sufficient, if accepted by the jury as true, to support the jury's determination of negligence on the part of the truck driver which must be imputed to his employer. (Veh. Code, § 402(a); *McCalla* v. *Grosse,* 42 Cal.App.2d 546, 549 [109 P.2d 358]; *Gorzeman* v. *Artz,* 13 Cal.App.2d 660, 662 [57 P.2d 550]; *Withey* v. *Hammond Lumber Co.,* 140 Cal.App. 587, 595 [35 P.2d 1080].)

■ The court instructed the jury that the evidence to the effect that the truck driver had no license was admitted only for the purpose of consideration in connection with all other evidence of the question of whether the owner knew or was put on inquiry to know that it was entrusting the operation of its truck to one who was not a competent driver. It was also stated in the instruction that in determining whether the company was negligent and whether its negligence was a proximate cause of the injury the jury could consider what knowledge, if any, the evidence showed the owner to have concerning the lack of an operator's license. The appellant contends that the instruction submits the question of knowledge to the jury when there is a complete absence of testimony tending to show knowledge and further that the instruction is contrary to law. But we must bear in mind that the evidence offered might have supported an inference that appellant had ample notice to put it on inquiry as to the driver's qualifications. For the reasons stated above we believe that the inclusion within the complaint of the allegation of knowledge and the proof offered to substantiate that allegation was sufficient to constitute a question of fact for the jury. Hence the submission of the issue of knowledge was not error. In support of its contention that the instruction is contrary to the law appellant relies on *Strandt* v. *Cannon,* 29 Cal.App.2d 509 [85 P.2d 160], and *Hunton* v. *Cali-*

*fornia Portland Cement Co.,* 50 Cal.App.2d 684 [123 P.2d 947]. Those cases are readily distinguishable from the case before us since they do not involve the employment of an operator of a motor vehicle; but notwithstanding that fact the instruction under attack on the present appeal is in accord with the general principles of law set forth therein. The instruction in the instant case stated that ''the possession or lack of an operator's license is not evidence that defendant, Charles Hameister, was or was not generally a competent driver; nor is it evidence that he was or was not negligent on the occasion in question.'' This statement is in accord with the principles enumerated in the Strandt case, *supra,* at page 518, and in the Hunton case, *supra,* at page 691. However, it is just as well settled that where a company knows that its driver had no operator's license that knowledge is sufficient to put it on inquiry as to his competency, and it is for the jury to determine under the circumstances whether the company was negligent in permitting him to drive its vehicle. (*Owens* v. *Carmichael's U-Drive Autos, Inc., supra,* p. 352; *Strandt* v. *Cannon, supra,* p. 514.) The instruction, therefore, was not contrary to law.

 The court read section 571(b) of the Vehicle Code relative to passing a streetcar where a safety zone has been established, and instructed that if the jury found that the truck driver violated the code section and that the violation was the sole proximate cause of the collision the verdict should be in favor of plaintiffs. Appellant complains of the instruction on the ground that section 571 was designed for the protection of pedestrians rather than for the regulation of the conduct of motorists toward each other at intersections. It is undisputed that in order to enter the intersection it was necessary for Hameister to pass a safety zone and a standing streetcar which obstructed his view of the southbound traffic on Ninth Street. The record does not show whether discharged or prospective passengers were present in the zone at that particular time. In view of the evidence it cannot be held that the court erred in the giving of this instruction.

 Appellant argues that because the traffic was controlled by automatic signals the court erred in reading to the jury section 550 of the Vehicle Code which provides that ''The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway'' and in instructing that

the driver of a car which is already in the intersection may assume that he will be given the right of way by an approaching vehicle. At the time respondents entered the intersection the automatic signal controlling the Ninth Street traffic showed "Go." In view of the fact that they were proceeding at a proper rate of speed and that they were lawfully in the intersection prior to the appellant's truck the court was correct in telling the jury that the respondents had the right of way and could assume that the driver of the other vehicle would yield that right of way so that they could "pass through the intersection without danger of collision. (*Page* v. *Mazzei*, 213 Cal. 644, 645 [3 P.2d 11] ; *Couchman* v. *Snelling*, 111 Cal.App. 192, 195 and 196 [295 P. 845].)

█ Finally, appellant attacks an instruction which stated that if the jury found that the condition of the signals was a contributing factor but also found that the truck driver "was not using the care and caution which the circumstances properly demanded" and was thereby negligent that the verdict should be in favor of the plaintiffs. The appellant objects to the quoted portion of the instruction requiring its driver to use care and caution on the ground that since the intersection was controlled by signals there was no requirement to look into the cross streets. (*Taylor* v. *Sims*, 72 Cal. App.2d 60, 63 [164 P.2d 17].) However, since appellant's driver was forced to pass a safety zone and a streetcar which obstructed his view the mandate of the instruction requiring him to use due care and caution under such circumstances was entirely proper. (*Potapoff* v. *Mattes*, 130 Cal.App. 421, 423 [19 P.2d 1016].)

The verdict and judgment in this case were supported by substantial evidence and the record fails to disclose any error which would permit a reversal under article VI, section 4½ of the California Constitution.

The judgment is affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied July 17, 1946, and appellants' petition for a hearing by the Supreme Court was denied August 15, 1946.