[Civ. No. 19285. First Dist., Div. One. July 26, 1961.]

LOWELL RAYMOND NAULT, a Minor, etc., et al., Appellants, v. DEBORAH M. SMITH, a Minor, etc., et al., Respondents.

Jack L. Burnam and Joseph L. Bortin for Appellants.

Hardin, Fletcher, Cook & Hayes and Cyril Viadro for Respondents.

TOBRINER, J.—We deal here with the construction of the guest statute (Veh. Code, § 17158). We find no error in the trial court's granting of a nonsuit as to appellant's[1] first count upon his opening statement because of his failure to state that he would prove that respondents received compensation for the ride during which appellant incurred injury. Nor do we find error in the court's rejection of appellant's instructions on his second count that respondents' false assumption that appellant possessed a license would constitute consideration to respondents for the ride. As to the third cause, however, we do find error. We do not believe that the guest statute immunizes respondent Mrs. Smith from liability if she negligently entrusted the involved vehicle to her daughter and if she knew, or should have known, that her daughter was not a licensed driver and not capable of operating the vehicle.

Appellant, "Skip" Nault, an 18-year-old amateur tennis player, entered a tennis tournament sponsored by the Orinda Country Club and paid his entry fee of $5.50. The fee entitled him to free overnight lodging. The tournament director arranged for appellant and two other boys who played in the tournament to stay with respondents the night of June 7, 1958. Following the day's activities at the tournament, appellant and the other boys drove to respondents' home in respondents' jeep. Debbie Smith, the daughter of the owners of

---

[1]Although Lowell Raymond Nault brings this action by and through his guardian *ad litem,* Gerard Nault, and Gerard Nault likewise sues individually, we use the singular term "appellant" throughout to designate Lowell Raymond Nault.

the jeep and a respondent herein, drove back to the house; her mother sat next to her in the front seat.

After dinner at the Smiths' home, Debbie, with appellant and the other boys, went to the village to buy milk. Although Debbie did not have a driver's license her mother allowed her to drive the jeep to the store accompanied by appellant as the assumed licensed adult driver. Mrs. Smith thought that appellant had a license, because of Debbie's statement, which appellant did not hear, that " 'Skip is over eighteen and he is licensed.' " In fact appellant had no license and had not indicated that he had one. Nor did appellant realize that Debbie was unlicensed.

On the way home Debbie picked up three other boys. They drove north on Orinda Highway and, at Manzanita Drive, Debbie, driving between 20 and 25 miles per hour, suddenly made a right turn. When, as a consequence, appellant was thrown out of the jeep he incurred serious injuries.

Appellant alleges four separate causes of action: in the first he charges that he "was riding as a passenger" in the jeep at the time of the accident and asserts his passenger status as a result of his payment of the tournament entry fee of $5.50, which entitled him both to lodgings as well as to an arrangement between respondents and the country club; he then charges Debbie with negligence in the operation of the jeep. The second cause of action claims the liability of Mrs. Smith for Debbie's negligence; it alleges appellant's status as a passenger because he was sent to the store by her mother under the erroneous assumption that he had a license which would enable her daughter to operate the jeep lawfully. The third cause charges Mrs. Smith with negligence in entrusting the jeep to an unlicensed driver who "was not capable of operating a motor vehicle safely under either ordinary, or extraordinary circumstances and conditions, all of which facts . . . [Mrs. Smith] well knew or, in the exercise of ordinary care, should have known." Lastly, appellant charged Debbie with willful misconduct in the operation of the jeep.

Following appellant's opening statement, the court granted respondents' motion for nonsuit as to the first cause of action on the ground that appellant did not allege any consideration to respondents or an agency relationship between respondents and Orinda Country Club. The court denied motions for nonsuit on causes two and three but required appellant to augment the opening statement and complaint to allege compensation to respondents in appellant's act of accompanying

Debbie to the store at Mrs. Smith's request for the purpose of obtaining groceries. The court indicated that a nonexistent license could not provide the compensation requisite for appellant's status as a passenger.

As to the third count, against Mrs. Smith, the court refused to instruct the jury that if it found that Mrs. Smith negligently entrusted the jeep to Debbie and that such negligence proximately caused Skip's injuries, Mrs. Smith would be liable, irrespective of appellant's status. The court, instead, instructed the jury that, if appellant were a guest, the owner would not be liable under any theory except for willful misconduct.

The jury returned a verdict for respondents on all counts submitted to it; appellant appeals from the judgment of nonsuit and the judgment entered on the jury verdict. We shall separately analyze the issues as to each count.

1. *The first cause of action.*

The court granted a nonsuit upon appellant's opening statement on this count. Appellant raises both a procedural and substantive objection. We turn, first, to the procedural point.

The opening statement revealed self-evident gaps in appellant's claim of liability. The court could properly inquire whether appellant as plaintiff, charged with the burden of proof, could overcome the deficiencies described by the court, and make out a case. But appellant's answers to the court's inquiries only served to confirm the insufficiencies. While it is true that a nonsuit may be granted only when a plaintiff has undertaken to state all the facts which he intends to prove (*Paul* v. *Layne & Bowler Corp.* (1937), 9 Cal.2d 561, 564 [71 P.2d 817]), appellant here, in ultimately stating to the court his whole projected case, affirmatively showed its inadequacy. The court was not required to let the case proceed to trial only to reach its ultimate nemesis, after all the proof had been introduced, in appellant's failure to establish liability.

Having concluded that appellant fails as to his procedural point, we turn to the substantive one. The cases do not support appellant's theory that the tournament entry fee entitled him to accommodations which were to be assigned by the club; that this "included free overnight lodging if needed," and that in furnishing such service the Smiths became the ostensible agents of the club. Indeed, appellant even posited a

262

more sweeping theory : that he was not required to prove that the Smiths acted as the club's agent, and that a gratuitous rendition of such services would be enough. To the court's question, "Are you going to show agency on the part of these people, or are you going to show some compensation running to them. Now, if you aren't, I am going to grant a nonsuit . . . because you haven't alleged that," appellant answered, "We will stand pat on the first count," which did not include such allegations.

We must first determine whether the Smiths' *gratuitous* rendition of the asserted obligation of the club to appellant would meet the requirement of section 17158 (previously § 403) of the Vehicle Code that appellant was not a "person who as a guest accept[ed] a ride . . . without giving compensation for such ride. . . ."[2]

We find no cases that hold that the gratuitous assumption of another's obligation satisfies the statutory requirement; the decisions generally construe the words "giving compensation for such ride" to signify the giving of some "tangible benefit" to the "person who furnishes the ride, a benefit which is a motivating influence for supplying the transportation." (*Benjamin* v. *Rutherford* (1956), 146 Cal.App.2d 561, 562 [303 P.2d 1079] ; *Shapiro* v. *Bookspan* (1957), 155 Cal.App.2d 353, 357 [318 P.2d 123] ; *Martinez* v. *Southern Pacific Co.* (1955), 45 Cal.2d 244, 250 [288 P.2d 868].) If the Smiths accommodated appellant as a gratuity they received nothing of "tangible benefit"; the benefit would, indeed, flow not to the Smiths but to appellant. The Smith's gratuitous assumption of the club's claimed obligation would not, then, suffice.

We turn, second, to appellant's argument as to agency : that appellant "from the acts" of the Smiths, as "a reasonable person" could "infer that they had assumed to act as agents" and that they, therefore, should be treated as ostensible agents. The argument assumes that the club, as principal, obtained compensation in the form of the registration fee and that such payment would cover the Smiths as agents. It is true that the Supreme Court has held that the

---

[2]The section reads:

"No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or wilful misconduct of the driver."

principal of an agent driver will be included within the definition of one who furnishes the ride. (*Malloy* v. *Fong* (1951), 37 Cal.2d 356, 376-377 [232 P.2d 241].) Hence appellant would contend that the tournament fee reached, through the Smiths' agency, as far as the ride. Since Mrs. Smith "sent" appellant to obtain the milk for the expected breakfast waffles, appellant performed an errand to get the food for which he had already paid and which the Smiths, as agents, were obliged to furnish. Appellant, then, according to this theory, gave the Smiths a derivative compensation for the ride.

The first difficulty with this position lies in the fact that appellant did not set out in his pleadings or assert in his opening statement any agency of the Smiths. As we have pointed out *supra*, one reason for the nonsuit emanated from appellant's apparent stated rejection of the agency of the Smiths. The court asked if appellant would "show agency on the part of these people," and he replied he would "stand pat" on the complaint. The complaint does not allege such agency.

A second and more formidable difficulty lies in the decisions. Even if we assumed that appellant paid for lodgings and that Mrs. Smith acted as the club's agent for the purpose of providing them, we must recognize that the ride itself conjured up another matter. The presumed business relationship between Mrs. Smith and appellant did not necessarily reach to the ride. The cases construe the statute strictly and hold that even if the driver of the car may receive some amorphous advantage from taking the rider, it is not enough; the rider must render a "special tangible benefit" and such benefit must be "the motivating influence for furnishing the transportation. . . ." (*McCann* v. *Hoffman* (1937), 9 Cal.2d 279, 286 [70 P.2d 909], quoted in *Gillespie* v. *Rawlings* (1957), 49 Cal.2d 359, 364 [317 P.2d 601].)

*Lyon* v. *City of Long Beach* (1949), 92 Cal.App.2d 472 [207 P.2d 73], applies such a requirement to the particular ride during which the accident occurred. While, in that case, the rider paid the driver for "the daily trip to and from the Douglas plant" (p. 477), and defendant conceded the relationship of carrier and passenger for such transportation, the relationship did not extend to a trip "to a café," after the parties reached the plant, "for the purpose of getting some coffee." (P. 474.) The appellate court sustained the trial court's ruling that "as a matter of law the decedent [rider]

was a guest. . . ." (P. 474.) The suggestion that the driver benefited in "retaining the good will of decedent and his continued patronage as a rider" (p. 478) met with this observation by the court: "The supposed benefit conferred upon defendant—the good will of the two riders—is not, under the facts of the instant case, such a tangible benefit as would constitute the riders as passengers at the time the accident happened." (P. 479.) Likewise, in *Bummer* v. *Liberty Laundry Co.* (1941), 48 Cal.App.2d 648 [120 P.2d 672], the measure of self-interest an employer may have had in getting an employee to work by picking her up every morning did not suffice to stay a court from holding her a guest as a matter of law.

These cases foreclose appellant from reliance upon the claimed relationship of the Smiths and himself as to the lodging to convert him into a passenger on the ride. The general arrangement for lodging does not necessarily generate the special relationship as to the ride. The Smith's acquisition of appellant's good will, their solicitude, even their existing business relation as to board and lodging, does not, under the cases, produce that required special tangible benefit related to the particular undertaking. Appellant bore the burden of showing this requisite compensation; he did not offer to prove it. (*Martinez* v. *Southern Pacific Co., supra,* 45 Cal.2d 244, 250.)

We must therefore conclude that the trial court did not commit error in granting the nonsuit as to appellant's first cause of action.

2. *The second cause of action.*

▆▆▆▆ Appellant's main contention as to this count is that "the court ruled out" his "basic theory" to the effect (1) that Mrs. Smith sent him to the grocery store because she believed he had a license, (2) that he became a passenger because he furnished as compensation an assumed but nonexistent license, and (3) that the failure of consideration resulted from her negligence rather than from any conduct of appellant. We shall point out, first, the exact nature of the court's rulings and, second, the inefficacy of appellant's theory.

In his opening statement appellant explained that "the family of Mr. and Mrs. Smith and Debbie merely assumed that he [appellant] was licensed," and upon that false basis Mrs. Smith sent him on the trip with Debbie. The compensation to the Smiths, according to appellant, consisted of the expected furnishing of the supposed license. The trial court

countered "that there has to be . . . some form of actual consideration bestowed . . . not an impression." Pressing for a showing of some consideration other than the license, the court queried, "Do you intend to show that Mrs. Smith asked him to go along to accompany the girl for some purpose in getting groceries and so on?" Appellant answered affirmatively and ultimately amended his opening statement to say that "we shall prove that Mrs. Smith asked Skip to go along to accompany Deborah so that she would not have to go alone to this grocery store. Also, we shall prove that because she wanted someone over the age of eighteen years of age to be with her as well as assist her handling the groceries or any other problems that might arise."

Consistent with its above expression, the court refused appellant's proffered instructions to the effect that if appellant were sent on the errand " 'under . . . [Mrs. Smith's] mistaken belief that his [Skip's] presence would enable her [Debbie] to operate the jeep lawfully' " appellant would be a passenger. The court rejected appellant's further proposed instruction that "[c]onsideration for such a ride may be shown by the fact (if you find it to be the fact), that Lowell Raymond Nault, was asked by defendant, Betty Smith, to accompany her daughter, Deborah Smith, in defendants' jeep for the purpose of having someone over the age of 18 years accompany Deborah Smith, or to relieve defendant, Betty Smith, of the duty of responsibility of accompanying Deborah Smith, herself."

The real issue becomes whether Skip furnished any consideration for the ride. The court stated that, because Skip did not have a license and did not make any statement that would lead Mrs. Smith to believe he did have one, "there is no consideration flowing from the boy to Mrs. Smith." Appellant answered that " [n]o one can come into this court and say the consideration that was agreed upon was worthless because I made a mistake because I did a very careless act. No one can come into court and plead his own negligence as a defense." Appellant asserts that the court erroneously assumed that the lack of the license constituted a "failure of consideration."

Appellant misconstrues the court's ruling and the effect of the lack of a license. More specifically he fails to distinguish between lack of consideration and failure of consideration. As stated in Corbin on Contracts: "When a promise is given by one party to another, without anything being bargained for or given in exchange for it, the promise is without consider-

ation." (P. 414.) Failure of consideration means "that a performance for which the promisor bargained has not been rendered. . . ." (1 Corbin on Contracts (1950), § 133, pp. 414, 415.) In the instant case, appellant made no promise; the parties did not "agree upon" any consideration; hence, their actions disclosed, not a failure of consideration, but a lack of consideration. Such lack of consideration dispels the possibility of compensation.

In any event, the issue of whether Mrs. Smith received a tangible benefit for the ride and whether that benefit principally induced the invitation to appellant must frame questions for the jury. ██ As Justice Wood stated as to the status of the rider in the comparable case of *Benjamin* v. *Rutherford, supra,* 146 Cal.App.2d 561, "The determination of that question is one of fact unless the evidence admits of but a single inference; in this case, an inference that plaintiff gave compensation for the ride. [Footnote omitted.] If reasonable minds can differ on the question whether that is the sole inference that reasonably may be drawn from the evidence, the question is one of fact, not of law." (Pp. 562-563.) ██ The issue of compensation here cannot be resolved with such certainty that reasonable minds could not differ upon it.

Indeed in *Roberts* v. *Craig* (1954), 124 Cal.App.2d 202 [268 P.2d 500, 43 A.L.R.2d 1146], this court held that whether the "required 'compensation' can be found in the furnishing of herself and her driver's license to appellant in order that appellant could comply with the law" constituted a "fact issue." (P. 211.) In that case the rider did possess the license which the permittee driver sought; here, the rider lacked it; the latter situation falls far short of the former in composing an issue from which but one inference can be drawn; yet even in *Roberts* we held the issue a "fact issue." (P. 211.) (See also *Gillespie* v. *Rawlings, supra,* 49 Cal.2d 359, 366; *Baker* v. *Novak* (1956), 144 Cal.App.2d 514, 518 [301 P.2d 257].)

It is impossible to find in the absence of the license the presence of compensation. The compensation which is required cannot be an anticipated or a desired one; it must be a real and existent one. That the Smiths were negligent or in error in expecting it, does not add to its creation or make it the more tangible. The substance of it did not lie in the Smiths' minds but in its actuality. Furthermore, here, the court gave general instructions to the jury as to the nature of the required consideration; the jury found none. Appellant asks us to hold

that the jury, in the light of the above reasoning, could not reasonably have concluded that the nonexistent license did not furnish compensation; he asks the drastic instruction that, as a matter of law, it constituted consideration. Neither the cases nor the inherent logic of the situation sustain him.

3. *The third cause of action.*

 The third cause of action pleads the independent negligence of Mrs. Smith in sending Debbie on the "excursion to purchase household supplies" although Mrs. Smith "knew or . . . should have known" that her daughter "was not a licensed driver, and was not capable of operating a motor vehicle safely. . . ." This cause presents the preliminary question of whether any evidence supports a showing of Mrs. Smith's negligence as well as the ultimate and crucial one of whether liability for such negligence, if found, would be barred by the guest statute. We shall explain our reasons for holding that the jury could have found negligence on the part of Mrs. Smith and that, since her liability was not insulated by the guest statute, the court should have so instructed the jury.

Sufficient evidence would uphold a finding that Mrs. Smith negligently entrusted the jeep to Debbie. As the trial court pointed out, "[t]here was evidence to . . . [the] effect" that "the jeep is a tricky automobile." "You have a girl here who had never been on a public street and the mother had allowed the girl to take a group of youngsters down for the first time without any supervision." The trial court concluded, "I think it is enough to go to the jury."

The issue of Mrs. Smith's negligence was, indeed, a jury question. Section 14607 of the Vehicle Code makes it unlawful for a person to permit an unlicensed minor to operate a motor vehicle; section 14606 prohibits a person from permitting any unlicensed person to operate his vehicle on the highways. "[V]iolation of the statute by the owner makes out a *prima facie* case against him in favor of a person who has sustained injury through the negligence of such unlicensed driver." (*Owens* v. *Carmichael's U-Drive Autos, Inc.* (1931), 116 Cal.App. 348, 352 [2 P.2d 580].) Knowledge of possession of a temporary permit allowing a person to drive only if accompanied by a licensed driver is sufficient to put the entrustor "upon inquiry as to the competency of" the unlicensed driver. (*Owens* v. *Carmichael's U-Drive Autos, Inc., supra*, 116 Cal.App. 348, 352.) It is then for the jury to determine under the circumstances whether the entrustor is

negligent in permitting the unlicensed driver to operate the vehicle. (*Shifflette* v. *Walkup Drayage etc. Co.* (1946), 74 Cal.App.2d 903, 909 [169 P.2d 996], *Owens* v. *Carmichael's U-Drive Autos, Inc., supra,* 116 Cal.App. 348, 352.)

Respondents contend that Mrs. Smith's testimony to the effect that Debbie was a competent driver prevented the issue from going to the jury. But Mrs. Smith's testimony did not inexorably command acceptance. While, as respondents argue, the lack of a license cannot automatically be equated with incompetency in driving, and while such lack may only have placed upon Mrs. Smith the duty of inquiry as to Debbie's ability, which Mrs. Smith may have found sufficient, still the issue was for the jury. The jury might not have believed some of the testimony of Mrs. Smith and, instead, found that she negligently entrusted the jeep to Debbie.

If the jury could, then, have concluded that Mrs. Smith herself was negligent, we must finally determine if the guest statute truncated her liability because she was a "person legally liable for the conduct" of Debbie, and it was Debbie's conduct that caused the accident.

We believe the Supreme Court decision in *Benton* v. *Sloss* (1952), 38 Cal.2d 399 [240 P.2d 575], is enlightening upon this issue: the case holds that the guest statute immunizes the " 'person legally liable for the conduct of such driver' " from a vicarious liability to the guest but not from direct responsibility for his own negligence. (P. 403.) In that case the defendant, a used car dealer, failed to inspect the brakes of a car which he allowed an unlicensed minor to drive in the expectation the minor would purchase it. In an ensuing accident the minor's guests suffered injury. Both the minor's negligence and defendant's failure to inspect the brakes, which proved to be defective, contributed to the result. Sloss sought the protection of the guest statute as to the plaintiff guests but the court said: "Section 403 bars actions against the 'driver' of a vehicle or against 'any other person legally liable for the conduct of such driver.' *The phrase 'person legally liable' for the driver's conduct is clearly intended to cover cases in which the owner is vicariously liable for the driver's conduct* because of the relationship of the parties, as principal-agent, or because of imputed negligence under section 402. . . . *Section 403 does not limit the common-law liability of the owner of a vehicle for his own negligence as owner.*" (P. 403; emphasis added.)

Respondents assert three attempted distinctions of the case; none succeed.

Respondents first contend that "it is *for* the negligence of the unfit driver that the owner of the car is liable even in a case of negligent entrustment." They cite *Hughes* v. *Wardwell* (1953), 117 Cal.App.2d 406, 408-409 [255 P.2d 881], to the effect that the owner who " 'knowingly permits an unfit driver to use the owner's car is liable for the negligence of the unfit driver in the use of that car.' " But the negligence of Debbie is not a necessary concomitant to Mrs. Smith's liability here. Debbie's negligence would be a condition to Mrs. Smith's *vicarious* liability, but it is not to Mrs. Smith's *direct* liability. In the former case the statute protects Mrs. Smith because she *is* the "other person legally liable for the conduct of the driver," and her liability would vicariously attach only because of Debbie's negligence. In the latter case Debbie's negligence does not even enter into the picture, and the statute is not involved.

A hypothetical case may aid in the clarification of the issue of Mrs. Smith's independent liability. Suppose that Mrs. Smith knew that Debbie's vision were defective and that she required the use of glasses for driving. If Mrs. Smith sent Debbie on the errand, knowing that she did not have the glasses, and an accident occurred not because of her negligence but because of Debbie's poor vision, Mrs. Smith could well be found liable for her independent negligence. Mrs. Smith's liability would not rest upon any negligence of the driver, or vicarious liability, but upon her own carelessness in dispatching Debbie without her glasses. The guest statute would not apply.

Respondents secondly contend that in *Benton* "plaintiff was not the guest of the defendant" but here appellant "was Mrs. Smith's guest as much as he was Debbie's" and that "considerations of policy which require that Debbie be protected by the statute similarly require that its protection be extended to her mother." Any such extension of nonliability for admitted tortious action contravenes the stated principle of the Supreme Court: " 'The common law right of having redress for injuries wrongfully inflicted, being lessened by such statutes, necessitates strict construction, and also *that cases be not held within the provisions of such statutes unless it clearly appears that it should be so determined.*' " (*Prager* v. *Israel* (1940), 15 Cal.2d 89, 93 [98 P.2d 729].) In a day of increasing danger from automobile accident, and, indeed, at a time when

many writers and jurists tell us that, to meet the problem, even the principle of liability for fault is inadequate and that we must invoke an absolute liability, we see no "considerations of policy" for *reducing* liability for fault. To broaden the absolution here in order to cover the mother would be to grant the statute a liberal construction, which violates the court's admonition, and to introduce new considerations of policy, which trespass upon the exclusive province of the Legislature.

Respondents thirdly contend that in cases, such as *Benton*, "involving defective automobiles . . . the owner may be liable even though the driver himself was free of negligence." We see no valid distinction, however, between the dispatch of the car with defective brakes and its dispatch with a defective driver.

Can it be argued, however, that *Benton* may be distinguished, and the statute become applicable, because Debbie sat at the wheel and it was her conduct which caused the accident; that Mrs. Smith obtains the protection of the section because she cannot be held "legally liable for the *conduct* of the driver"? (Emphasis added.) The point is, however, that Mrs. Smith is not charged with the *conduct* of the driver; she incurs liability because she dispatched the jeep with an incompetent driver. Mrs. Smith's tort effected its damage by means of the acts of a defective driver; the fact that such means consisted of Debbie's conduct does not work backward to extinguish Mrs. Smith's liability.

We believe the principle of *Benton* v. *Sloss, supra,* 38 Cal. 2d 399, applies. We note, too, that the question has been considered in other jurisdictions: thus Kansas permits recovery to a guest for negligent entrustment of a vehicle to an incompetent or an unlicensed driver while the Court of Appeals for the Eighth Circuit and Ohio deny such recovery.

In the Kansas case of *Bisoni* v. *Carlson* (1951), 171 Kan. 631 [237 P.2d 404], an administrator brought an action for wrongful death against both the driver of a vehicle in which the deceased rode as a guest and the owner of the vehicle. Charging the driver, a minor under the age of 16 years, with "gross and wanton negligence," (p. 405), the plaintiff likewise contended that the owner, the driver's father, "negligently allowed" his son to operate the car even though he "knew or had reasonable cause to know" that his son was "an incompetent, careless, reckless automobile driver. . . ." (P. 405.)

The defendants argued that unless plaintiff could recover

against the driver under the guest statute he was barred as to both defendants. The appellate court examined the two relevant statutes: the one, as to vicarious liability, provided that " 'Every owner of a motor vehicle causing or knowingly permitting a minor under the age of sixteen years to drive such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by the negligence of such minor in driving such vehicle.' " (P. 406.) The other, the guest statute, stated " ' That no person who is transported by the owner *or operator* of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner *or operator* for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle.' " (Pp. 406-407.)

Holding that the statutes were not in conflict because the only "owner" mentioned in the guest statute was "the one who *is transporting* a person who claims damages" (p. 407), the court held that plaintiff could recover under the statute providing for vicarious liability and denied that the guest statute limited that responsibility. Three of the seven justices dissented. Following the majority opinion, the same court reached the same conclusion in *Ware* v. *State Farm Mutual Automobile Ins. Co.* (1957), 181 Kan. 291 [311 P.2d 316].

On the other hand, the Court of Appeals for the Eighth Circuit interpreted a similar guest statute in South Dakota to bar recovery against an absent owner. (*Ortman* v. *Smith* (8th Cir., 1952), 198 F.2d 123, cert. den. 344 U.S. 856 [73 S.Ct. 95, 97 L.Ed. 664].) The court declared that "an absent owner may avail himself of the guest statute" (p. 126) and, therefore, would not be liable unless the driver were guilty of " 'willful and wanton misconduct.' " (P. 124.) The authorities upon which the court relied, however, are anything but persuasive. It first refers to "*Benton* v. *Sloss* (Cal.App.), 234 P.2d 749," the opinion of the California District Court of Appeal which the Supreme Court set aside. (P. 126.) *Randall* v. *Stager* (1946), 355 Pa. 352 [49 A.2d 689], cited by the court, does not actually bear upon the problem because the plaintiff did not allege negligent entrustment; moreover, the court applied the statute of Ohio where the tort occurred, which provided for nonliability of " '[t]he *owner,* operator or person responsible for the operation of a motor vehicle' " except for " '*wilful or wanton misconduct of such operator,*

*owner or person responsible for the operation of said motor vehicle.'"* (P. 690; emphasis partly added.) The cited case of *Hawkins* v. *Sydnor* (1938), 170 Va. 267 [196 S.E. 619], likewise does not involve an allegation of negligent entrustment. The Court of Appeals finally cites *Cunningham* v. *Bell* (1948), 149 Ohio St. 103 [77 N.E.2d 918], which involves the Ohio statute, which we discuss, *infra,* and *Posey* v. *Krogh* (1934), 65 N.D. 490 [259 N.W. 757], wherein the North Dakota court held that the plaintiffs must prove "that the owner was guilty of gross negligence in permitting her brother to operate the car." (P. 761.) The guest statute in that case provided for nonliability of "owner" as well as driver except for "gross negligence," a protection to the owner not contained in the California statute. (P. 760.)

The Supreme Court of Ohio recently reached the same conclusion as the Court of Appeals, denying the owner's liability on a negligent entrustment theory. As noted *supra,* the Ohio statute specifically protects the owner, and is thus distinguishable from the California legislation. Thus neither the Ohio decisions nor those based on similar statutes are exactly in point. Moreover, the court in *Tonti* v. *Paglia* (1961), 171 Ohio St. 520 [172 N.E.2d 618], stated that "[t]he reason for this rule was succinctly stated, as follows, by Justice Griffin in *Benton* v. *Sloss* (Cal.App.), 234 P.2d 749, 753," and quoted a portion of the opinion of the District Court of Appeal which the Supreme Court set aside. (P. 620.) We are not impressed by the Ohio or Court of Appeals decisions which rely in part upon reasoning which has been specifically rejected by the Supreme Court of this state in interpreting our statute.

We conclude that there is nothing inherent in the California guest statute which insulates an owner of a vehicle for his own independent negligence in entrusting it to an incompetent driver. *Benton* v. *Sloss, supra,* 38 Cal.2d 399, makes it clear that the owner as such holds no talisman against liability; the guest statute does not inexorably reach backwards to exonerate the owner from his own tort.

The judgment of nonsuit on the first cause of action is affirmed. The judgment on the remaining causes of action is affirmed as to counts two and four and reversed as to count three. The costs on appeal are to be borne equally by the parties.

Bray, P. J., and Duniway, J., concurred.