[Civ. No. 8067.   Fourth Dist., Div. Two.   Dec. 30, 1966.]

JULIETTE SYAH et al., Plaintiffs and Respondents, v.
CLYDE JOHNSON et al., Defendants and Appellants.

Joseph W. Jarrett, Frank W. Woodhead and Henry F. Walker for Defendants and Appellants.

Robert A. Neeb, Jr., and Charles L. Crouch, Jr., for Plaintiffs and Respondents.

KERRIGAN, J. — In early April 1961 defendant, Leslie Richard Hill, was employed by defendants, Clyde Johnson, Richard Johnson, and Johnson and Son, a partnership, as a pickup and delivery man. Approximately three weeks prior to the occurrence of the accident involved in this appeal, Hill, in chauffeuring three customers of his employers, temporarily lost control of the car which he was driving and ran over a curb as a result of a dizzy spell. One of the passengers immediately telephoned the service manager of the car agency owned and operated by defendant-employers, informed the official of the incident, advised Hill had either passed out or was sick, and suggested Hill be medically examined inasmuch as if he continued to drive, the definite danger existed that he would either hurt himself or someone else. Prior to this incident, Hill had struck his head on a door when entering a car and felt a ''hot'' sensation in his head, which event was observed by two coemployees. A day or two following the blow on the head, Hill had slipped and fallen at his employers' Lincoln-Mercury Agency, had landed on his back and might possibly have struck his head in falling. The parts manager either saw the fall or saw Hill soon after the latter occurrence.

Later, the parts manager of the agency told the service manager, Mr. Woodard, that Mr. Hill had staggered against the wall going up the stairs at the agency. Subsequently, Mr. Woodard was informed by someone in the shop that Mr. Hill had bumped his head in getting into a Renault.

In any event, the service manager had actual knowledge of at least two of the instances and he informed the agency-owners of at least the one instance where Hill had lost control of the car while transporting business customers.

Following the dizzy spell episode involving the three passengers and the receipt of the telephone call from the customer, the service manager phoned a doctor's office and arranged with the receptionist for an examination of Hill. He did not talk with the doctor directly and did not advise the receptionist that the doctor should determine whether Hill was capable of driving in connection with his employment. The service manager merely requested an appointment for an employee who had sustained a dizzy spell, and Hill was examined by the physician the same afternoon. Hill furnished the doctor with his medical history which may be fairly summarized as indicating the patient had always enjoyed good health generally.

Hill informed the doctor that he had never blacked out previously and explained as much as he could recall concerning the dizzy episode with the passengers. Hill also related to the doctor the fact that his pickup-and-delivery work required him to drive. Apparently the doctor performed a perfunctory examination, advised Hill he could find nothing wrong, released him to return to work, and further suggested that if the feeling of nausea or dizziness recurred, the patient should report back to him. Upon returning to work from the examination, Hill informed the service manager that the doctor had found nothing wrong with him but had suggested he report back in the event he had any further "spells." The service manager did not contact the doctor nor did he receive a report from the physician concerning the examination, but dismissed the incident from his mind and allowed Hill to continue his regular duties as a delivery man.

On May 16, 1961, defendant Place left her Lincoln Continental at defendants' Lincoln-Mercury Agency at Newport Beach for the purpose of having a minor repair effected. Defendant Hill drove her to the Irvine Country Club located some two miles from Newport Beach where she was to remain while the car was being serviced. Later in the day, at approximately 4:15 p.m., Hill was directed by his employer to return to the country club for the purpose of providing courtesy transportation to Mrs. Place. Upon arriving at the club, Hill continued to drive the owner's Lincoln and intended to return to the car agency so that he could be dropped

off and Mrs. Place could then continue home. Driving north on Pacific Coast Highway en route to the car agency, Hill approached the intersection of Jamboree Road where the signal light was red for northbound traffic. However, Hill did not slow down nor stop for the signal but veered suddenly to the right, swerved to the left, proceeded ahead with a "terrific burst of speed," and collided with substantial force with a stopped car likewise proceeding in a northerly direction. The decedent, William E. Syah, was a hitchhiker riding in the rear seat of the opposing vehicle and sustained fatal injuries in the accident which culminated in his demise the following day.

The evidence is clear and convincing that Hill "blacked out" just before the accident as a result of an epileptic seizure.

The plaintiffs initiated this lawsuit in their capacities as the widow and three minor children of the decedent against the defendant-employee, his employers, and the car's owner, Place. Following a jury trial, a verdict was returned in the sum of $30,000 against the employers only and in favor of the defendant-employee (Hill) and the car owner (Place). Judgment was then entered accordingly, and dual motions for judgment notwithstanding the verdict and for new trial were denied. The defendant-employers appeal from the judgment, no cross-appeal having been taken by plaintiffs from the judgment in favor of Hill and Place.

The following grounds are asserted by the employers on their appeal from the judgment: (1) exoneration of the employee of negligence likewise exonerated the employers; (2) insufficiency of evidence to sustain any breach of duty by employers; and (3) excessive damages.

■ Vicarious liability is not an issue because the defendant Hill was found not to be negligent, and the judgment in favor of Hill has become final. (See *Weil* v. *Barthel,* 45 Cal.2d 835, 837 [291 P.2d 30]; *Bell* v. *Towne,* 155 Cal.App.2d 225, 227 [318 P.2d 110].)

The doctrine of "negligent entrustment" is clearly distinguishable from the theory of "vicarious liability." Negligent entrustment is a common law liability doctrine. (*Jones* v. *Ayers,* 212 Cal.App.2d 646, 655 [28 Cal.Rptr. 223].) Conversely, the obligation of a lending owner of an automobile is one of statutory liability. (*Jones* v. *Ayers, supra.*) ■ An owner of an automobile may be independently negligent in entrusting it to an incompetent driver. (*Nault* v. *Smith,* 194

Cal.App.2d 257, 268-272 [14 Cal.Rptr. 889].) California is one of several states which recognizes the liability of an automobile owner who has entrusted a car to an incompetent, reckless, or inexperienced *driver,* and has supplemented the common law doctrine of negligent entrustment by enactment of a specific consent statute. (See 163 A.L.R. 1418; Veh. Code, §§ 17150-17157.)

Likewise, where a vehicle owner negligently entrusts his vehicle to another with knowledge that the *vehicle* is defective, such owner may be held liable even in the absence of negligent conduct on the part of the driver. *(Benton* v. *Sloss,* 38 Cal.2d 399, 405 [240 P.2d 575].)

Similarly, foreign jurisdictions have given favorable sanction to the common law doctrine of negligent entrustment. (See *McGowin* v. *Howard* (1948), 251 Ala. 204 [36 So.2d 323, 324], and cases cited, rhg. den.; *Vaughn* v. *Butler* (1961) 103 Ga.App. 884 [121 S.E.2d 72, 75] rhg. den.; *Rice* v. *Spencer* (1963) 43 Misc.2d 331 [250 N.Y.S.2d 620, 621-622].)

"It is generally recognized that one who places or entrusts his motor vehicle in the hands of one whom he knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable for an injury inflicted by the use made thereof by that driver, provided the plaintiff can establish that the injury complained of was proximately caused by the driver's disqualification, incompetency, inexperience or recklessness . . . .

"Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been known by the owner." (5A Am.Jur., Automobiles and Highway Traffic, § 580, pp. 590-591; see also 8 Am.Jur.2d, Automobiles and Highway Traffic, §§ 561, 573; 60 C.J.S., Motor Vehicles, § 431.)

▪ Under the theory of "negligent entrustment," liability is imposed on vehicle owner or permitter because of his own independent negligence and not the negligence of the driver, in the event plaintiff can prove that the injury or death resulting therefrom was proximately caused by the driver's incompetency. Thus, in *Nault* v. *Smith, supra,* 194 Cal.App. 2d 257, plaintiff was injured while riding with the daughter of the defendant-parent. The daughter did not have a driver's

license but the mother permitted her to drive the vehicle accompanied by plaintiff. One cause of action charged the mother with negligent entrustment for allowing her unlicensed minor daughter to drive the automobile. The defendants— mother and daughter—attempted to shield themselves from liability under the guest statute. In the court's opinion, Justice Tobriner reasoned that the defendant-mother's liability was not predicated upon the negligence of the defendant-minor and distinguished vicarious liability from the parent's direct liability. Under the doctrine of vicarious liability, the agent must be negligent for the principal to be held liable; however, under the doctrine of negligent entrustment, the guest statute was held inapplicable because the driver's negligence does not even enter into the picture and the statute (guest) is not involved. In the *Nault* case, *supra,* the court further utilized the following language:

"A hypothetical case may aid in the clarification of the issue of Mrs. Smith's independent liability. Suppose that Mrs. Smith knew that Debbie's vision were defective and that she required the use of glasses for driving. If Mrs. Smith sent Debbie on the errand, knowing that she did not have the glasses, and an accident occurred not because of her negligence but because of Debbie's poor vision, Mrs. Smith could well be found liable for her independent negligence. Mrs. Smith's liability would not rest upon any negligence of the driver, or vicarious liability, but upon her own carelessness in dispatching Debbie without her glasses. The guest statute would not apply. . . .

"Respondents . . . contend that in cases, such as *Benton,* 'involving defective automobiles . . . the owner may be liable even though the driver himself was free of negligence.' We see no valid distinction, however, between the dispatch of the car with defective brakes and its dispatch with a defective driver.

"Can it be argued, however, that *Benton* may be distinguished, and the statute become applicable because Debbie sat at the wheel and it was her conduct which caused the accident; that Mrs. Smith obtains the protection of the section because she cannot be held 'legally liable for the *conduct* of the driver'? [Italics by court.] The point is, however, that *Mrs. Smith is not charged with the conduct of the driver; she incurs liability because she dispatched the jeep with an incompetent driver.* Mrs. Smith's tort effected its damage by means of the acts of a defective driver; the fact that such

means consisted of Debbie's conduct does not work backward to extinguish Mrs. Smith's liability.'' [Italics added.]

In *Merry* v. *Knudsen Creamery Co.*, 94 Cal.App.2d 715 [211 P.2d 905], an action was brought by the victim of an accident against an employer whose employee was driving a company truck at the time of the accident. Evidence indicated that faulty brakes may have contributed to the accident. One of the principal issues on appeal was whether it was error for the court to instruct the jury that there could be no verdict against the owner of the truck and in favor of the truck driver. The reviewing court, in distinguishing vicarious liability and negligent entrustment, stated: ''We are, however, of the view that under the facts disclosed by the evidence in the case, prejudicial error was committed in advising the jury when it returned into court for further instructions. The jury was told that there could be no verdict against the owner of the truck and in favor of the driver. They were told that unless the driver was negligent there could be no liability on the part of the creamery—in other words that they could hold the creamery company liable only on the theory that it was responsible for the acts of its agent, the driver. It is obvious from the colloquy between court and jury hereinabove quoted that the jury considered the driver to be free from negligence, or at least desired to exonerate him. The jury were thus precluded from basing a verdict upon a finding that, although the driver acted as a reasonably prudent man in reporting the slack in the brakes and relying upon the fact that they had been adjusted and appeared to be in good order the following morning and functioned normally up to the time of the accident—that nevertheless the owner of the truck had failed to meet or overcome the presumption of negligence on his part arising under section 670(a) of the Vehicle Code. '' . . . . . . . . . .

''It is self-evident that the owner of a vehicle who knowingly or negligently permits it to be operated upon a public highway in a defective condition is liable for damages resulting from such condition, whether his agent in the operation knows of its defective condition or not. In other words, as might be concluded in this case, the driver was but an innocent instrumentality in operating the defective vehicle for his employer, whose responsibility if any arises through his failure, either personally or through an employee or agent, to exercise due care to see that the brakes on the vehicle were in the condition required by section 670(a) of the Vehicle Code.''

In urging reversal of the judgment, defendants rely primarily on *Armenta* v. *Churchill*, 42 Cal.2d 448 [267 P.2d 303]. In the cited case, the defendant-husband, as agent and employee of defendant-wife, operated his wife's truck and was involved in an accident which caused the death of another. Suit for damages was filed by plaintiff-heirs against the husband and wife. The complaint contained two counts: (1) the first charged that defendant-wife was responsible for the acts of her agent and employee-husband; (2) the second charged that the defendant-wife was herself negligent in permitting defendant-husband to operate the truck with actual knowledge that he was a careless, negligent and reckless driver. The answer of defendants admitted that the defendant-husband was the agent and employee of defendant-wife, and that if the husband were negligent in the operation of his wife's vehicle, the wife was liable, but denied the allegations of the second count concerning the claimed negligence on the part of defendant-wife in entrusting the truck to the husband knowing him to be a careless, negligent and reckless driver. The trial court, in view of the admission of agency and employment relationship and the liability of the wife under the doctrine of vicarious liability, as to the first cause of action, refused to admit evidence offered to prove the wife's knowledge of his careless, negligent and reckless propensities which it was argued constituted independent and separate negligence on the part of defendant-wife. In upholding the trial court's ruling, the Supreme Court held: ''Before considering further points discussed by the parties, it is necessary to note the state of the pleadings and the issues thereby presented. The amended complaint was drawn in two counts. The first charged negligence on the part of Dale Churchill as driver of the truck, acting as agent and employee of his wife, Alece Churchill, and within the scope of his agency and employment. The second incorporated all the allegations of the first count, and *contained the added allegations that Alece Churchill was herself negligent in entrusting the truck to her husband, she having actual knowledge that he was a careless, negligent and reckless driver*. As to the first count, defendants admitted in their answer the agency and scope of employment of Dale Churchill; but *as to the second count, they denied the added allegations*. During the trial plaintiffs offered, in support of the added allegations of the second count, evidence to show that Dale had been found guilty of some 37 traffic violations, including a conviction of man-

slaughter, and that Alece had knowledge of these facts. Defendants objected to the offered evidence because it was directed to an issue which had been removed from the case by the pleadings. After the objection was sustained, *defendant Alece Churchill again admitted her liability for all damages sustained by plaintiffs in the event that her husband was found to be liable.*

"Plaintiffs contend that the offered evidence should have been admitted . . . . Therefore the question presented here is whether there was any material issue remaining in the instant case to which the offered evidence of some 37 traffic violations, including a manslaughter conviction, would be relevant.

"It is true that defendant Alece Churchill's admission of vicarious liability as the principal for the tort liability, if any, of her husband was not directly responsive to plaintiffs' added allegations of fact contained in the second count *relating to her personal negligence.* But the only proper purpose of the allegations of either the first or second count with respect to Alece Churchill *was to impose upon her the same legal liability as might be imposed upon Dale Churchill in the event the latter was found to be liable. Plaintiffs could not have recovered against Alece Churchill upon either count in the absence of a finding of liability upon the part of Dale Churchill*; and Alece had admitted her liability in the event that Dale was found to be liable. Plaintiffs' allegations in the two counts with respect to Alece Churchill merely represented alternative theories under which plaintiffs sought to impose upon her *the same liability as might be imposed* upon her husband . . . .'' [Italics added.]

In *Armenta, supra,* the Court noted that by reason of the wife's admission of vicarious liability, such issue had been completely removed from the case and to permit evidence of multiple traffic violations would clearly have inflamed the jury. In the case under review, admission of evidence relating to the three prior incidents involving defendant, would have no such inflammatory effect. Moreover, the dictum in *Armenta* to the effect that the wife's liability under the doctrine of negligent entrustment was dependent on a finding of liability on the part of the husband, is clearly contrary to the common law, as enunciated in *Nault* v. *Smith, supra,* 194 Cal.App.2d 257.

Defendant also places substantial reliance upon the recent decision in *Vice* v. *Automobile Club of So. Cal.,* 241 Cal.App.

2d 759 [50 Cal.Rptr. 837], in which plaintiff's complaint alleged the defendant-insurer knowingly issued a policy of liability insurance to an 87-year-old unlicensed assured who was totally blind in one eye, with only partial vision in the other eye, and whose faculties were further impaired by partial or total deafness. The insured thereafter drove a motor vehicle and struck and injured the plaintiff. Plaintiff alleged that the insured's collision with the plaintiff was proximately caused by the defendant's issuing of the policy of insurance because the insured would not have operated the motor vehicle without being insured, and defendant could foresee when it issued the policy to the insured such coverage would lead the insured to think he was qualified to drive, and the insured would inevitably become involved in an accident. The court held that inasmuch as plaintiff's complaint failed to allege that the assured was negligent in the operation of his vehicle that such complaint failed to state a cause of action under the doctrine of negligent entrustment in that the elderly insured would necessarily have to be negligent in the operation of his vehicle in order to impose liability on the carrier, and plaintiff's second amended complaint was consequently held vulnerable to a general demurrer. While the reasoning in *Vice* is in apparent conflict with prior decisional law under the negligent entrustment theory inasmuch as an entrustor may be held liable whether the entrustee is negligent or not (see *Jones* v. *Ayers, supra,* 212 Cal.App.2d 646, 655; *Nault* v. *Smith, supra,* 194 Cal.App.2d 257, 267), the decision in the cited case is certainly sound as the negligent entrustment theory was definitely inapplicable since there was *no* placing or entrusting a vehicle with the insured driver, and the application of the doctrine clearly requires that such "placing" or "entrusting" of a vehicle be present as a necessary element for the theory to be invoked. (5A Am.Jur., Automobiles and Highway Traffic, § 580, pp. 590-591.) In *Vice* the insured was driving his own car at the time of the accident; in the instant case, Hill was driving a car entrusted to him by the defendant-employers and thus the negligent entrustment theory may be clearly imposed in the case under review.

The evidence discloses the defendant-employer hired Hill approximately six weeks before the accident. In the month of April, after only three weeks' employment, three separate incidents came to the employers' attention concerning this one employee: the first involving a dizzy spell where the auto he was operating ran over a curb; another occasion where

he fell; and a third occurrence involving the striking of his head on a car door. ■ A principal is charged with all material facts known to his agent, and knowledge of an agent is imputed to his principal. (Civ. Code, § 2332; *Benner* v. *Hooper*, 112 Cal.App. 53, 63 [296 P. 660]; *Laukkare* v. *Abramson*, 9 Cal.App.2d 447, 449 [50 P.2d 478].) It is well-settled that where a company knows that an employee has no operator's license that such knowledge is sufficient to put the employer on inquiry as to his competency; it is for the jury to determine under such circumstances whether the employer was negligent in permitting the employee to drive a vehicle. (See *Shifflette* v. *Walkup Drayage etc., Co.*, 74 Cal. App.2d 903, 908 [169 P.2d 996].)

■ Whether these three separate incidents imputed sufficient notice to the employers of the seriousness of the employee's condition obviously represents a question of fact for the jury's determination, which issue has been resolved in favor of plaintiffs. ■ The employers urge that their duty was complied with in that they arranged an appointment for Hill and sent him to a doctor for examination following the dizzy spell. It is clear that the epileptic condition from which Hill suffered manifested itself prior to the accident, and that the defendant-employer had actual notice of either the specific infirmity or a definite symptom thereof. The jury could have reasonably found that the act of the defendant-employer in merely arranging an appointment with a physician did not represent compliance with the duty of a retail automobile sales firm not to entrust a customer's car to an incompetent driver for use upon a public highway, particularly when the dizzy spell episode was compounded with knowledge of two other incidents of accidental nature involving the same driver occurring within a relative short period of employment. A remarkable direct causal connection here exists between the entrustee's physical incompetency or unfitness and the collision resulting therefrom, inasmuch as it is undisputed that the epileptic seizure resulted in the complete blackout suffered by Hill immediately prior to the actual collision.

■ The wrongful death award in the sum of $30,000 is attacked as being excessive. Decedent was a paroled convict who died penniless. He had married the plaintiff-spouse in April 1950, was 38 years of age at the time of his demise, and left his widow and three minor daughters, ranging in age from 3 to 9 years, as his survivors. He was a compulsive gambler who had served one year in the penitentiary on bad

check charges. His wife had left him on several occasions and had taken the children with her. Immediately prior to his death, he had apparently abandoned his wife and children in Massachusetts and departed for parts unknown and had taken the family's remaining funds of $400-$600 with him. His wife had worked during almost all of their married life. After sporadic separations, she reconciled with him upon his promise to quit gambling and provide a decent home. However, on the positive side, there was evidence indicating he was a good father and husband and an excellent provider when he refrained from gambling. During extended terms of employment between the years 1955-1959, his earnings were in excess of $100 per week until his imprisonment in September 1959. After his release from confinement, he did construction work, was further employed by a specialty company until he left Massachusetts, and had rendered substantial financial support to the family. He was good to the children, taking them to beaches, parks, picnics, and fishing, and except for the gambling vice, his wife would not have traded him for anyone. Because of his sudden departure for California without contacting his parole officer, there was a strong possibility he was in violation of his parole at the time of his demise.

The measure of damages in a wrongful death case is the amount the heirs were receiving at the time of the death of the decedent and what such heirs would have received had the decedent lived. (*Cervantes* v. *Maco Gas Co.*, 177 Cal.App. 2d 246, 252 [2 Cal.Rptr. 75] ; *Johnson* v. *Western Air Express Corp.*, 45 Cal.App.2d 614, 622 [114 P.2d 688].) However, in determining the amount of damages, the trier of facts is always limited by the general rule that pecuniary damage is the extent of recovery, and consequently, the amount awarded must bear some reasonable relation to the loss shown by the evidence. (*Zeller* v. *Reid*, 26 Cal.App.2d 421, 424 [79 P.2d 449] ; *Dickinson* v. *Southern Pacific Co.*, 172 Cal. 727, 731 [158 P. 183].) The heir of a decedent who institutes suit for damages may only be awarded damages for the wrongful death of the decedent if he can demonstrate that he has suffered a pecuniary loss because of the wrongful death of the decedent. (*Bond* v. *United Railroads of San Francisco*, 159 Cal. 270, 277 [113 P. 366, Ann.Cas. 1912C 50, 48 L.R.A. N.S. 687] ; *Fuentes* v. *Tucker*, 31 Cal.2d 1, 5 [187 P.2d 752].) The limitation of damages to the amount of pecuniary loss suffered by the heir as the result of the wrongful death of the decedent does not prevent recovery for the deprivation of the society, comfort, and protection of the decedent. (*Tyson* v.

*Romey*, 88 Cal.App.2d 752, 758 [199 P.2d 721].) The heirs of a decedent may recover the pecuniary loss of present and probable future benefits, including the value of future contributions, the value of any personal service, advice or training that probably would have been given, and the value of the deceased's society and companionship. (*Ure* v. *Maggio Bros. Co., Inc.*, 24 Cal.App.2d 490, 491-492 [75 P.2d 534].) ■ The amount of damages to be awarded in a particular case should be left to the trier of fact and should depend on the circumstances presented. (*Smith* v. *County of San Mateo*, 57 Cal.App.2d 820, 824 [135 P.2d 372]; *Ewens* v. *Newman*, 131 Cal.App. 602, 604 [21 P.2d 1007].) The jury has broad discretion, subject to the usual control where the award is plainly excessive or inadequate, to give such amount "as under all the circumstances of the case may be just." (Code Civ. Proc., § 377.) ■ In the case of the death of a husband and father, the chief element is the present value of the earnings he would have contributed to the family during the period of his life expectancy. (*Gall* v. *Union Ice Co.*, 108 Cal.App. 2d 303, 320 [239 P.2d 48].) The death of a father may also cause a special loss to the children. (*Sumrall* v. *Butler*, 102 Cal.App.2d 515, 520 [227 P.2d 881].) ■ It is only when the amount of damages awarded is so disproportionate to the injuries received as to suggest passion, prejudice, or corruption on the part of the trier that an appellate court may control the amount of damages awarded. (*Foshee* v. *Wolters*, 86 Cal.App.2d 766, 772 [195 P.2d 930]; *Gall* v. *Union Ice Co.*, *supra*; *Potter* v. *Empress Theatre Co.*, 91 Cal.App.2d 4, 14 [204 P.2d 120].) ■ The jury, in awarding the plaintiffs damages in the sum of $30,000, was instructed on the subject of the decedent's life expectancy as well as all other proper elements which might lawfully be considered in compensating the heirs. The fact that the decedent had a remaining life expectancy in excess of 30 years, when considered with the children's tender ages and his earning abilities, and when further complemented by the widow's right to support, fully justified the jury in returning a verdict in a reasonable sum.

Judgment affirmed.

McCabe, P. J., concurred.

A petition for a rehearing was denied January 16, 1967, and on January 25, 1967, the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied February 21, 1967.