[No. D045948. Fourth Dist., Div. One. Aug. 1, 2005.]

JELD-WEN, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THERESA KEENER et al., Real Parties in Interest.

## COUNSEL

McAtee Harmeyer, Jeff G. Harmeyer and Stephanie M. Alexander for Petitioners.

No appearance for Respondent.

Ward & Ward, Alexandra S. Ward; The Zucker Law Firm, Andrew J. Zucker; Basile Law Firm and J. Jude Basile for Real Parties in Interest.

## OPINION

**HUFFMAN, Acting P. J.**—In this wrongful death action arising from a motor vehicle collision, the decedent's survivors, plaintiff Keener family, sued the other driver involved in the accident, his employer, and the company which had leased the driver's truck to his employer (respectively, petitioners and defendants Hector Solis [employee], Jeld-Wen, Inc., doing business as Summit Window and Patio Door [employer], and Penske Trucking [owner]; sometimes collectively defendants).[1] Defendants brought a motion for summary adjudication on the grounds that they were entitled to dismissal of the plaintiffs' alternative claim of negligent entrustment of the vehicle, because before trial, defendant-employer Jeld-Wen had admitted vicarious liability for the acts of its employee Solis, under the doctrine of respondeat superior. (Code Civ. Proc., § 437c, subd. (f).) The trial court denied the motion.

Defendants filed this petition for writ of mandate to require the trial court to grant the motion for summary adjudication as to the negligent entrustment claim. Defendants take the position that they are entitled as a matter of law to this summary adjudication order, because negligent entrustment should not be considered to be a separate independent tort, but rather a theory of vicarious liability. According to defendants, the pretrial admission by the employer that its employee was acting in the course and scope of his employment at the

---

[1] Plaintiffs Theresa Keener, Micah Keener, and Elizabeth Keener are the survivors of Elza Scott Keener, the motorcyclist killed in the subject motor vehicle accident. They are the real parties in interest in this writ proceeding.

time of the accident, such that the employer admits to vicarious liability under the doctrine of respondeat superior for any such alleged employee negligence, leads only to the conclusion that the negligent entrustment theory is essentially superfluous to the basic cause of action for damages for negligence and therefore may not be separately pursued at trial. Defendants contend that this approach is required by the leading case in the area, *Armenta v. Churchill* (1954) 42 Cal.2d 448, 457–458 [267 P.2d 303] (*Armenta*), and is necessary to avoid prejudicial evidentiary problems that would otherwise arise about admissibility of evidence of the employee's prior motor vehicle accidents, as known to the employer (even though the same evidence would ordinarily not be admissible to prove such negligence on a particular occasion under Evidence Code section 1104).

We agree with one of the petitioner-defendants, Jeld-Wen/Summit, that under these circumstances, the plaintiffs' negligent entrustment theory against it is unsupported as a matter of law and should not be separately pursued, where, as here, there is a binding pretrial admission of liability by the employer under respondeat superior for the employee's alleged negligence, if any is proven. We will grant the petition to require the trial court to vacate its order denying the summary adjudication motion as to the employer and to grant it as to the employer only. No allegations of negligent entrustment are made against the defendant employee, and he was not entitled to the summary adjudication requested. Also, as to the owner/leasing company, Penske, the petition must be denied, because the pleadings and record are insufficient to entitle it to the same treatment as the employer in this factual context, for purposes of summary adjudication based on an admission of liability under respondeat superior.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2002, the plaintiffs' decedent, their husband and father, was riding his motorcycle when he collided with a large truck driven by the employer's employee, Solis, who allegedly failed to yield the right-of-way while driving on duty (delivering windows to residential construction development projects). Solis held a driver's license which enabled him to legally drive this type of truck, and he had been driving it for a period of approximately six months. The employer had leased the truck from its owner, codefendant Penske.

Plaintiffs filed a wrongful death complaint against the employer, the employee, and the leasing company. They alleged a single cause of action which encompassed three theories of liability: negligence, negligence per se, and negligent entrustment of a vehicle.

During discovery, the plaintiffs learned that in addition to the leased Penske truck involved in the accident, Solis had driven pickup trucks for Summit, and while doing so, he had had three property damage collisions on the job in 1998, 2000, and 2002 (two in parking lots and one on the freeway). There was no evidence produced indicating that Solis was incompetent, ill, or otherwise unfit to drive the Penske truck on the date of the incident, and the results of a blood test taken immediately after the accident showed no alcohol or drugs in Solis's system at the time.

All defendants moved for summary adjudication of plaintiffs' claim. They provided a separate statement referring to Jeld-Wen/Summit's admission in discovery and in a declaration by its manager that it, as the employer, would assume vicarious liability for any alleged negligence of its employee. Defendants contended that, as a matter of law, this admission meant that no separate theory of negligent entrustment of the vehicle could be pursued at trial, due to unavoidable evidentiary prejudice from such a showing. By making this admission, the employer sought to keep out prejudicial evidence of the employee's prior motor vehicle accidents, under Evidence Code section 1104.[2] Rather, the employer defendant would be liable, if at all, under a common negligence theory under the doctrine of respondeat superior.

The trial court denied defendants' motion for summary adjudication: "Defendants have failed to meet their burden of establishing that Plaintiffs' cause of action for Negligent Entrustment has no merit because one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to Plaintiff's negligent entrustment causes of action."[3] In argument, the court explained its reasoning by saying that the employer had only made a qualified acceptance of vicarious liability, and because no determination had yet been made of the employee's liability, the negligent entrustment count remained a triable issue for the jury, as did the negligence of the employee. The court noted that it still remained to be shown whether the employer had given adequate or inadequate training to the employee.

---

[2] Under Evidence Code section 1104, "evidence of a trait of a person's character with respect to care or skill is inadmissible to prove the quality of his conduct on a specified occasion." (See 1 Witkin, Cal. Evidence (4th ed. 2000) Circumstantial Evidence, § 39, pp. 371–372.)

[3] In its ruling, the trial court also sustained plaintiffs' evidentiary objections regarding a toxicology report on the decedent's condition at the time of death, on the grounds the matter was irrelevant to the sole issue raised in this motion and unduly prejudicial. (Evid. Code, § 352.) The ruling also granted a defense motion for evidentiary and issue sanctions for spoliation of evidence regarding the decedent's use of an illegal non-Department of Transportation approved helmet or based on the examination and inspection of the motorcycle prior to its disassembly. These portions of the ruling are not challenged in these writ proceedings.

Defendants filed a writ petition in this court in which they all claimed that the trial court improperly denied the motion for summary adjudication. We issued an order to show cause why the relief should not be granted and stayed further proceedings in the trial court. We also obtained supplemental briefing on the effect of the enactment of Civil Code section 1431.2 (implementing certain comparative negligence principles) on the *Armenta, supra,* 42 Cal.2d 448 decision.

## DISCUSSION

### I

### ISSUES PRESENTED

■ It is appropriate for this court to review defendants' petition for a writ of mandate to avoid a potential trial on nonactionable claims. (Code Civ. Proc., § 437c, subds. (f)(1), (m); *Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1294–1295 [13 Cal.Rptr.3d 700] (*Knowles*).)
■ " 'Since a motion for summary judgment "involves pure matters of law," we review a ruling on the motion independently. [Citation.] Summary judgment is proper when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.]' [Citation.]" (*Knowles*, at p. 1295.)

To prevail in a motion for summary adjudication, defendants must bear a burden of persuasion " 'that "one or more elements of" the "cause of action" in question "cannot be established," or that "there is a complete defense" thereto. [Citation.] [¶] . . . [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]' " (*Knowles, supra,* 118 Cal.App.4th at p. 1301, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

■ Put another way, have defendants "conclusively negated a necessary element of the [plaintiff's] case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial"? (*Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 648 [96 Cal.Rptr.2d 874].) Separate counts in a single pleading may be summarily adjudicated. (*Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854–1855 [16

Cal.Rptr.2d 458].) The issue of whether a defendant's negligence was a legal cause of an alleged injury is also subject to summary adjudication. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 488–491 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

To resolve these issues, we first outline negligent entrustment authority, then apply it to the employer-employee context, and address the evidentiary concerns involving an employee's prior accidents. Before doing so, however, we seek to clarify that although all three defendants were moving parties in the summary adjudication motion, the separate statement only recites that the employer, Jeld-Wen/Summit, admits to and accepts vicarious liability for the alleged negligence of the employee Solis. We therefore interpret the summary adjudication motion and the petition as properly presenting the issue of the entitlement to summary adjudication regarding negligent entrustment, but only as affecting the employer, Jeld-Wen/Summit. Therefore, this application for writ relief does not properly include either the employee Solis or the truck owner, the leasing company Penske, because they have not made any essential admission of liability as an employer, for the reasons we will outline in part III, *post.* (See Veh. Code, § 17150 et seq.)[4]

With respect to the entitlement to summary adjudication in favor of the employer itself, defendants present this issue as whether negligent entrustment should properly be viewed as an independent tort by the employer, subject to separate proof, or instead as a theory of vicarious liability subsumed in the overall negligence cause of action, which may be disposed of as a matter of law based upon the pretrial admission of respondeat superior liability. We next outline the case law guidelines on this common law theory of liability for negligence, with attention to the causation element of negligence in particular.

II

NEGLIGENT ENTRUSTMENT THEORY OF LIABILITY
AGAINST EMPLOYER: BACKGROUND

As already noted, plaintiffs' wrongful death claim encompasses three different types of allegations of negligence: the driver's negligent operation of the vehicle and negligence per se (failure to yield right of way), and the employer's negligent entrustment of the vehicle. These theories of liability all seek the same award of damages for wrongful death. The ordinary wrongful

---

[4] To the extent necessary, we will discuss the issues of joint and several liability for noneconomic damages, as raised by Civil Code section 1431.2 (Prop. 51), in part II.C of this opinion.

death damages will include economic damages (financial support and loss of services) and noneconomic damages (loss of companionship and consortium). (Code Civ. Proc., § 377.61.) They will not include punitive damages, nor any other special or separately arising damages to the heirs that might conceivably be separately attributable to the acts of the employer in negligently entrusting a vehicle to an allegedly accident-prone driver. (*Krouse v. Graham* (1977) 19 Cal.3d 59, 67–70 [137 Cal.Rptr. 863, 562 P.2d 1022]; Cal. Tort Damages (Cont.Ed.Bar 2d ed. 2005) § 3.40, pp. 143–144.)

■ A commentator has outlined the significant concerns regarding potentially prejudicial proof of damages as to an employer as follows: "The majority of jurisdictions prohibits the plaintiff from pursuing a negligent entrustment claim once respondeat superior liability is established. These jurisdictions reason that the employer, though possibly guilty of a separate tort, is still only liable for the employee's negligence. According to these jurisdictions, the negligent entrustment action is abandoned because the plaintiff cannot hope to recover anymore [*sic*] than what the defendant already conceded to under respondeat superior. Collateral evidence necessary to establish negligent entrustment, therefore, becomes unnecessary, irrelevant and inflammatory." (Powell, *Submitting Theories of Respondeat Superior and Negligent Entrustment/Hiring* (1996) 61 Mo. L.Rev. 155, 162, fns. omitted (hereafter Powell), discussing *McHaffie v. Bunch* (Mo. 1995) 891 S.W.2d 822.)

California is included in this majority view, as noted in Annotation, Negligent Entrustment—Motor Vehicle (1984) 30 A.L.R.4th 838: It has "resolved the evidentiary conflict arising through the negligent entrustment theory in holding that where the vehicle owner has admitted liability for the acts of the driver under another theory of recovery, it is improper to allow the person injured in a motor vehicle accident to proceed under the theory of negligent entrustment." (*Ibid.*, citing *Armenta, supra,* 42 Cal.2d 448.)

It must be noted that the common law doctrine of negligent entrustment can arise in many factual contexts, as well as employment. We distinguish on their facts those cases that have arisen in the nonemployment context (e.g., parental entrustment of a car to a youngster who drives badly,[5] or a rental car

---

[5] E.g., *Allen v. Toledo* (1980) 109 Cal.App.3d 415 [167 Cal.Rptr. 270], summarized by Witkin in this manner: "In a negligence action, evidence of other accidents of the driver of an automobile is excluded because its probative value is outweighed by the likelihood that the jury would improperly infer negligence from a trait of character [see Evid. Code § 1104; citation]. *But where the action is also against another defendant for negligent entrustment of the car to an incompetent driver, the prior accidents are admissible on the issue of that defendant's knowledge of the driver's unfitness.* (*Allen v. Toledo* (1980) 109 Cal.App.3d 415, 419.)" (1 Witkin, Cal. Evidence, *supra,* Circumstantial Evidence, § 34, p. 365, italics added.) As we will show, this reasoning should not apply in the employer-employee factual context where the

company or the like which permits an unlicensed, infirm, or drunken driver to drive).[6] We also need not deal with those cases involving the employer's provision of a defective vehicle to a nonnegligent driver, since there is no contention here that there was anything mechanically wrong with the Penske truck provided to Solis by the employer.[7]

Accordingly, we do not seek to decide the broad issue of the overall separate nature of the negligent entrustment tort in any its other variations, as compared to the underlying negligence of the person entrusted with the vehicle. Our issue is more narrow and our focus is upon the employment factual context here, involving the employer's alleged negligent entrustment of a vehicle to a properly licensed driver who was not known to have health problems that would interfere with driving, but who had had known prior accidents, thus giving rise to the evidentiary concerns addressed by Evidence Code section 1104. Additionally, we have an undisputed fact before us that the employer admits on a pretrial basis to respondeat superior liability for any negligent driving by its employee. The question is whether there is a rule of law that entitled the employer in this case to summary adjudication in its favor on the negligent entrustment theory of liability against it.

### A

### Negligent Entrustment Elements and Causation

We begin with the current CACI No. 724 jury instruction, providing that where a plaintiff claims she was harmed because of a defendant's actions in negligently permitting a driver to use the defendant's vehicle, the plaintiff must prove all of the following: "1. That [*name of driver*] was negligent in operating the vehicle; [¶] 2. That [*name of defendant*] was an owner of the vehicle operated by [*name of driver*]; [¶] 3. That [*name of defendant*] knew, or should have known, that [*name of driver*] was incompetent or unfit to drive

---

employer makes a pretrial admission of vicarious liability for any negligent conduct of the employee.

[6] E.g., *Dodge Center v. Superior Court* (1988) 199 Cal.App.3d 332 [244 Cal.Rptr. 789] (seller of car to an unlicensed driver who gets into accident; seller not liable to injured person); *Vice v. Automobile Club of Southern California* (1966) 241 Cal.App.2d 759, 767 [50 Cal.Rptr. 837] (*Vice*) (no breach of an insurer's duty to an injured member of the public if the insurer has negligently issued personal injury automobile liability insurance to an impaired driver who later causes injury); *Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703 [252 Cal.Rptr. 613] (sober renter becomes drunk driver; rental company not liable to injured person); *Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 648 [96 Cal.Rptr.2d 874] (British renter/licensee has accident in California; injured person cannot sue rental company based on negligent entrustment due to foreign license); see 6 Witkin, Summary of California Law (9th ed. 2005 supp.) Torts, sections 999, 999A, 999B, pages 292–294.

[7] See, e.g., *Merry v. Knudsen Creamery Co.* (1949) 94 Cal.App.2d 715 [211 P.2d 905].

the vehicle; [¶] 4. That [*name of defendant*] permitted [*name of driver*] to use the vehicle; and [¶] 5. That [*name of driver*]'s incompetence or unfitness to drive was a substantial factor in causing harm to [*name of plaintiff*]." (CACI No. 724.)[8]

From this instruction, it appears that negligent operation of the vehicle that was entrusted is a necessary element of the claim of negligent entrustment. A theoretical problem arises regarding the causation element of the negligent entrustment cause of action, because "actionable negligence requires something more than a foreseeable possible consequence; it requires the happening of that consequence." (*Vice, supra,* 241 Cal.App.2d 759, 765.) For example, if the employer entrusts a vehicle to a known accident-prone employee, arguably negligently, but that employee never injures anyone in the course and scope of employment, has the employer still been negligent? What is the extent to which the employer is actually a joint tortfeasor with the employee who was driving in such a way as to inflict injuries? Was the employer's negligent entrustment a separate set of negligent acts by a separate actor, directly causing identifiable separate damage that the plaintiff should be able to prove, regardless of a pretrial admission of an employer's vicarious liability? Alternatively, does any admitted employer status merely create derivative liability for the same injury caused by the employee?

These questions can arise at different stages of the proceedings, depending on when the employer seeks to make an admission of vicarious liability for the employee's conduct. We are dealing here with a pretrial admission, intended to ·have the effect of avoiding the introduction of potentially prejudicial evidence of an employee's prior accidents. (Cf. *Allen v. Toledo, supra,* 109 Cal.App.3d at p. 421.)

Some cases have departed from the rule announced in *Armenta, supra,* 42 Cal.2d 448, that negligent entrustment evidence of the employee's prior accidents may not be presented against the employer when the employer has admitted to vicarious liability for the employee's conduct. (See, e.g., *Syah v. Johnson* (1966) 247 Cal.App.2d 534, 543–545 [55 Cal.Rptr. 741] (*Syah*) [evidence was simultaneously presented as to employee's prior accidents and employer's alleged negligent entrustment of the vehicle].) Specifically, we will next outline the *Armenta* authority and following cases, for the purpose of deciding whether the trial court in this case properly denied summary adjudication to the employer on the negligent entrustment theory. For our purposes here, the employer's pretrial admission of liability for the employee's conduct is sufficiently binding to allow us to treat this as a question of law, because this admission was made by the employer in response to

---

[8] This instruction could be adapted to cover the situation when an employer is not the actual owner of a vehicle that is entrusted, but instead is the lessor of it, and who controls it, as here.

requests for admissions, and also by the manager of the employer in his declaration. Moreover, even though proof remains to be made regarding whether the employee was actually negligent during the accident in question, there has been no showing on this record that the employer's admission of vicarious liability is not sufficiently final to dispose of the respondeat superior question as a matter of law.

### B

### *Armenta* and Following Cases

The leading negligent entrustment case in the employment context, *Armenta, supra,* 42 Cal.2d 448, 456–457, is extensively discussed by the parties. Although the Supreme Court in that case reversed the judgment before it on instructional error grounds involving safety standards, its well-reasoned views on the evidentiary problems presented in that case (the same as here, evidence of an employee's prior accidents) were clearly meant to be binding on the lower courts faced with parallel fact situations. Accordingly, we note our disagreement with the views expressed in an earlier case from Division 2 of this court, that the evidentiary holding of *Armenta* is merely dictum (*Syah, supra,* 247 Cal.App.2d 534, 543). Instead, that holding was rendered by the Supreme Court as part of its rule of decision in *Armenta,* given the employer-employee factual context presented there, and in order to give guidance to the lower court upon remand, and it is binding on the lower courts. (*Armenta, supra,* at pp. 456–459; see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 946–948, pp. 988–992.)

Turning to the evidentiary rulings set out in *Armenta, supra,* 42 Cal.2d 448 (involving the defendants Churchills, a wife and husband employer-employee team), we first note that the Supreme Court set the stage by outlining the state of those pleadings and the issues they presented, regarding admissibility of evidence of the defendant employee's (Dale) prior traffic violations and the defendant employer's (Alece) knowledge of them before the subject accident involving the employer's truck that killed the plaintiffs' decedent: "The amended complaint was drawn in two counts. The first charged negligence on the part of Dale Churchill as driver of the truck, acting as agent and employee of his wife, Alece Churchill, and within the scope of his agency and employment. The second incorporated all the allegations of the first count, and contained the added allegations that Alece Churchill was herself negligent in entrusting the truck to her husband, she having actual knowledge that he was a careless, negligent and reckless driver. As to the first count, defendants admitted in their answer the agency and scope of employment of Dale Churchill; but as to the second count, they denied the added allegations. During the trial plaintiffs offered, in support of the added allegations of the

second count, evidence to show that Dale had been found guilty of some 37 traffic violations, including a conviction of manslaughter, and that Alece had knowledge of these facts. Defendants objected to the offered evidence because it was directed to an issue which had been removed from the case by the pleadings. After the objection was sustained, defendant Alece Churchill again admitted her liability for all damages sustained by plaintiffs in the event that her husband was found to be liable." (*Id.* at p. 456.)

Based on that procedural scenario of developments during trial, the Supreme Court in *Armenta, supra,* 42 Cal.2d 448, concluded that the offered evidence of the employee's prior traffic violations was properly kept out, because there was no material issue remaining to which it could be legitimately directed. (*Id.* at p. 458.) This was so because once the employer-defendant Alece Churchill had admitted to vicarious liability as the principal for the tort liability, if any, of her employee-husband, "*the legal issue of her liability for the alleged tort was thereby removed from the case.*" (*Ibid.*; italics added.) From its analysis of the pleadings, the Supreme Court drew these conclusions about the nature of the respective theories against the employer and the employee, which we find instructive here: "[T]he only proper purpose of the allegations of either the first or second count with respect to Alece Churchill was to impose upon her *the same legal liability as might be imposed upon Dale Churchill in the event the latter was found to be liable. Plaintiffs could not have recovered against Alece Churchill upon either count in the absence of a finding of liability upon the part of Dale Churchill*; and Alece had admitted her liability in the event that Dale was found to be liable. Plaintiffs' allegations in the two counts with respect to Alece Churchill merely represented alternative theories under which plaintiffs sought to impose upon her the same liability as might be imposed upon her husband. Upon this legal issue concerning the liability of Alece Churchill for the tort, if any, of her husband, the admission of Alece Churchill was unqualified, as she admitted that Dale Churchill was her agent and employee and that he was acting in the course of his employment at the time of the accident." (*Armenta, supra,* 42 Cal.2d at p. 457, italics added.)

■ Based on this pleadings analysis in *Armenta,* no evidence of the employer's knowledge of the employee's prior accidents could properly be admitted, in light of the exclusionary rule of prior case law, now codified at Evidence Code section 1104, enacted in 1965. (*Armenta, supra,* 42 Cal.2d at p. 458.) Once the employer admittedly becomes vicariously liable for the negligent acts of the employee, there is no remaining basis at a future trial to attempt to prove the negligence of the employer itself, such as through knowledge of the employee's prior accidents, because the subject liability has already been adequately and completely established. This represents an effort to promote judicial economy by avoiding unnecessary litigation. It also represents an effort to ensure that prejudicial evidence on negligence is kept

out pursuant to the principles of Evidence Code section 1104, because the existence of negligence on a particular occasion should be determined from the nature of the subject act or omission, "not by defendant's character for care [or lack thereof] . . . . (See Law Rev. Com. Comment to [Evid. Code] 1104: Slight probative value of the evidence, balanced against danger of confusion of issues, collateral inquiry, prejudice, etc., warrants fixed exclusionary rule.)" (1 Witkin, Cal. Evidence, *supra,* Circumstantial Evidence, § 39, p. 372.)

■ Case law since *Armenta, supra,* 42 Cal.2d 448, has strayed from its views on the functional and close identity of these two liability theories when negligence is alleged against an employee in the course and scope of duties, and negligent entrustment of a vehicle is simultaneously alleged against the employer. Most notably, this court in *Syah* held: "Under the theory of 'negligent entrustment,' liability is imposed on vehicle owner or permitter because of his own independent negligence and not the negligence of the driver, in the event plaintiff can prove that the injury or death resulting therefrom was proximately caused by the driver's incompetency." (*Syah, supra,* 247 Cal.App.2d at p. 539.) The court said that under the negligent entrustment theory, "an entrustor may be held liable whether the entrustee is negligent or not . . . ." (*Id.* at p. 544.)

In *Syah* the court said that vicarious liability of the employer for the employee was not an issue before it, based on the jury's verdict that the employee-driver who caused the accident that injured plaintiff's decedent was not negligent, and the judgment as to the employee had become final. (*Syah, supra,* 247 Cal.App.2d at p. 538.) However, judgment against the employer was upheld for the acts of entrusting the vehicle to the employee, who was apparently much too ill to drive on a regular basis. (*Id.* at pp. 544–545 ["after only three weeks' employment, three separate incidents came to the employers' attention concerning this one employee: the first involving a dizzy spell where the auto he was operating ran over a curb; another occasion where he fell; and a third occurrence involving the striking of his head on a car door"]; *id.* at p. 545 [that employee was not held liable by the jury to the family of a person killed in the accident involving the employee, but the employer was held liable for negligent entrustment, based on its failure to obtain that employee a medical appointment soon enough].)

In *Syah*, the appellate court declined to follow *Armenta*'s teachings about the close relationship of these two negligence-based theories in the employment context, for two given reasons: "In *Armenta, supra,* the Court noted that by reason of the wife's admission of vicarious liability, such issue had been completely removed from the case and to permit evidence of multiple traffic violations would clearly have inflamed the jury. In the case under review, admission of evidence relating to the three prior incidents involving defendant, would have no such inflammatory effect. Moreover, the dictum in

*Armenta* to the effect that the wife's liability under the doctrine of negligent entrustment was dependent on a finding of liability on the part of the husband, is clearly contrary to the common law, as enunciated in *Nault v. Smith* [1961] 194 Cal.App.2d 257 [14 Cal.Rptr. 889]." (*Syah, supra,* 247 Cal.App.2d 534, 543; see 6 Witkin, Summary of Cal. Law, *supra,* Torts, § 1000, p. 391.)

■ As previously noted, we find the reasoning in *Syah* is flawed on both points. First, an appellate court may not properly disregard Supreme Court authority in favor of a lower court ruling that it prefers (i.e., "prior decisional law under the negligent entrustment theory [i.e., *Nault v. Smith, supra,* 194 Cal.App.2d 257] inasmuch as an entrustor may be held liable whether the entrustee is negligent or not . . . ."; *Syah, supra,* 247 Cal.App.2d at p. 544). In *Armenta,* the Supreme Court ruled upon the application of vicarious liability rules when there is a difficult proof problem presented, concerning the issues now covered by Evidence Code section 1104, and it had to reconcile those two competing doctrines. This represented application and development of the common law, not a statement contrary to it. (Cf. *Syah, supra,* at p. 543.) The lower courts are not authorized to depart from the statement in *Armenta, supra,* 42 Cal.2d 448, in cases such as this, involving a factual context of employment and injury to a third party by an employee acting in the course and scope of employment.[9]

Moreover, we disagree with the court's analysis in *Syah,* to the effect that the cited evidence was noninflammatory in nature. Rather, in our judgment, the prior incidents of illness of the employee who was entrusted with the customer's vehicle by the employer in *Syah* were actually the type of evidence that is a "red flag" that would have greatly influenced the jury in its negligence determination, as recognized by the Supreme Court in *Armenta.* (See *Syah, supra,* 247 Cal.App.2d 534, 536). At the very least, the decision in *Syah* may properly be called result-oriented, with respect to its support of a

---

[9] The statement in *Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 812 [251 Cal.Rptr. 202, 760 P.2d 399] is not to the contrary: "[T]here are many instances in which a defendant who is vicariously liable for another's acts may also bear some direct responsibility for an accident, either on the basis of its own action—for example, the negligent hiring of an agent—or of its own inaction—for example, the failure to provide adequate supervision of the agent's work. In addition, even when a nonsettling tortfeasor's liability may be wholly vicarious or derivative in nature, it does not invariably follow that equitable considerations will, as a matter of law, always call for the total shifting of loss to the more directly culpable tortfeasor." This authority is primarily directed toward equitable indemnity principles in the good faith settlement context, and does not illuminate the evidentiary problems solved by the Supreme Court in *Armenta, supra,* 42 Cal.2d 448.

separate basis for tort liability for negligent entrustment of the vehicle by the employer, where the vehicle driver/employee was exonerated by the jury (possibly due to sympathy for his illness).

Moreover, the decision in *Syah, supra,* 247 Cal.App.2d 534, is internally inconsistent because its holding fails to recognize that its own statement defining the doctrine of negligent entrustment includes a recognition that even if liability is imposed on the vehicle owner/permitter/employer because of its own "independent" negligence, this is proper only "in the event plaintiff can prove that the injury or death resulting therefrom *was proximately caused by the driver's incompetency.*" (*Id.* at p. 539, italics added.) Absent some causation of actual injury to a plaintiff by a negligent employee/driver, the employer/permitter will not be held independently negligent merely on the basis of allowing the use of a vehicle, if there was only a hypothetical injury to anyone from any negligent entrustment. It is pointless for a plaintiff to proceed to prove negligent entrustment by an employer, if the employer is already admitting before trial to vicarious liability for any negligent acts of the employee, except for the plaintiff's possible but improper purpose of seeking to bring in otherwise inadmissible evidence against the employer under Evidence Code section 1104.

 Accordingly, we conclude the holding in *Syah, supra*, 247 Cal.App.2d 534 is poorly reasoned and should not be followed. (See 9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 971–973, pp. 1020–1023.) *Syah* does not stand for the proposition that an employer's admission of vicarious liability for its employee's negligence may not serve to preclude an injured plaintiff from bringing in evidence of the employee's prior accidents, as against the employer.

Another such post-*Armenta* case, *Allen v. Toledo, supra,* 109 Cal.App.3d 415, has been interpreted as supporting admissibility of evidence of a driver's prior accidents, as against a separate defendant who entrusted the car to the incompetent driver. However, that case involved a father who entrusted his car to his teenage son, even though the father knew the son had had numerous prior automobile accidents. Vicarious liability of an employer was not at issue there, and those facts are distinguishable. (See 1 Witkin, Cal. Evidence, *supra,* Circumstantial Evidence, § 34, p. 365.)

 In any case, the principles set out in *Armenta, supra,* 42 Cal.2d 448, are clearly applicable to this case and we are bound by them. An employer's liability under the doctrine of negligent entrustment is dependent on a finding

of negligence and causation of harm on the part of the employee. In our case, an employer's pretrial admission of liability may permissibly serve the purpose of protecting it from the admissibility of evidence of the employee's prior accidents, which would not be probative of the employee's actual negligence on the occasion in question. Once an employer has admitted before trial to vicarious liability for its employee's negligence, if proven, the exclusionary rule of Evidence Code section 1104 operates to protect the employer from being exposed to prejudicial evidence that would be used to show the employer's prior knowledge of an employee's prior accidents, for purposes of imposing direct and separate liability on the employer.

Further, in the case before us, there is no basis for finding that the employer who has made this admission of liability should be subjected to otherwise inadmissible evidence of the employee's prior accidents on any of the alternative forms of negligent entrustment liability, such as a defective truck or an incompetent or unlicensed driver. Rather, *Armenta, supra,* 42 Cal.2d 448 indicates that summary adjudication should have been granted to prevent the plaintiffs from proceeding on their negligent entrustment theory, based on the employer's pretrial admission of liability for any alleged negligence of the employee, which is binding on the employer.

C

Comparative Negligence

There is a remaining question on the summary adjudication ruling, however. Since *Armenta, supra,* 42 Cal.2d 448, was rendered in 1954, before the 1970's development of comparative negligence rules, what is their effect upon any potential damages award against the employer for noneconomic and/or economic damages? (See, e.g., *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 625–626 [65 Cal.Rptr.2d 532]; Civ. Code, § 1431.2.)[10]

---

[10] "The Fair Responsibility Act of 1986 (Civ. Code, § 1431 et seq.), known popularly as Proposition 51, eliminated joint and several liability for noneconomic damages in actions based on 'comparative fault.' " (*Wimberly v. Derby Cycle Corp., supra,* 56 Cal.App.4th 618, 623, fn. 1.)

Under Civil Code section 1431.2, subdivision (a): "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

Plaintiffs' three theories of liability all seek the same award of both economic and noneconomic damages for wrongful death, which would be payable by the different defendants to the extent they are found liable on different theories, both direct and vicarious. The commentator referenced, *ante*, (Powell, *supra*, 61 Mo. L.Rev. 155, 163–164) has also suggested that it is difficult to reconcile the principles represented by Evidence Code section 1104 (excluding evidence of an employee's prior accidents, when the employer assumes vicarious liability for the employee's negligence) with a comparative fault system that requires a finder of fact to make determinations about the parties' respective degrees of fault (regarding evidence of the entrustor-employer's negligence in entrusting the vehicle to the entrustee-employee, compared to the entrustee's negligence in operating a vehicle), as follows: "In most jurisdictions, however, comparative fault does not affect the application of the majority rule. This policy suggests that 'comparative fault as it applies to the plaintiff should end with the parties to the accident.' *Negligent entrustment may establish independent fault on the employer but should not impose additional liability on the employer. The employer's liability under negligent entrustment rests on the negligence of the employee, so the employer's liability cannot exceed the liability of the employee.* For these reasons, the majority rule's rationale is applicable in comparative fault jurisdictions." (Powell, *supra*, 61 Mo. L.Rev. at pp. 163–164, fns. omitted, italics added.)

As applied here, the employer is admitting on a pretrial basis to vicarious liability for the employee's negligence. If and when there is an award of noneconomic damages, the rule of Civil Code section 1431.2 will be applied, such that "[e]ach defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault." (*Ibid.*) Based on *Armenta, supra,* 42 Cal.2d 448, and the evidentiary concerns it identifies, the damages attributable to both employer and employee will be coextensive (where none of the special variations of negligent entrustment theory is present, such as the provision of a defective vehicle). Specifically, in the employer-employee context, the negligent entrustment theory may not be separately pursued once the employer admits to vicarious liability for the negligence of the employee, because only the single injury claimed by the plaintiffs should be compensated. There is nothing in *Armenta* that is adversely affected by the development of these comparative negligence principles, because *Armenta* represents a different and still viable policy rule that is based upon evidentiary concerns about the vicarious liability of an employer for employee negligence.

In conclusion, the trial court erred in denying the motion for summary adjudication as to the employer only, and the petition will be granted to that limited extent.

## III

## OWNER OF TRUCK, PENSKE

Plaintiffs' complaint against the leasing company Penske alleges the same single cause of action including three theories of liability: negligence, negligence per se, and negligent entrustment of a vehicle. Plaintiffs claim some kind of "joint enterprise and business relationship" theory to allege that because all defendants were engaged in making money together, each should be liable for the injuries caused by the employee Solis's driving. They also claim both Penske and the employer failed to investigate the driver's qualifications and train him adequately.

■ The term "joint enterprise" may cause some confusion because it is "sometimes used to define a noncommercial undertaking entered into by associates with equal voice in directing the conduct of the enterprise . . . ." (*County of Riverside v. Loma Linda University* (1981) 118 Cal.App.3d 300, 313, fn. 4 [173 Cal.Rptr. 371].) However, when it is "used to describe a business or commercial undertaking[,] it has been used interchangeably with the term 'joint venture' and courts have not drawn any significant legal distinction between the two. [Citation.]" (*Ibid.*; see also *Shook v. Beals* (1950) 96 Cal.App.2d 963, 967–968 [217 P.2d 56].) Because plaintiffs use "joint enterprise" in the same sentence as "business relationship," we assume they are pleading a joint venture.

■ Plaintiffs allege the business relationship, or joint venture, "revolved around the production, sales, distribution, delivery and installation of materials for homes." However, there is no indication that the defendants intended to enter a joint venture. "There are three basic elements of a joint venture: the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise." (*Orosco v. Sun-Diamond Corp.* (1997) 51 Cal.App.4th 1659, 1666 [60 Cal.Rptr.2d 179]; see *Scottsdale Ins. Co. v. Essex Ins. Co.* (2002) 98 Cal.App.4th 86, 91 [119 Cal.Rptr.2d 62]; see also *Connor v. Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 863 [73 Cal.Rptr. 369, 447 P.2d 609].) Here, there is no evidence anyone but Jeld-Wen and its "doing business as" Summit had any

control over Summit, nor is there any evidence that Penske shared in the profits of, or had any ownership interest in, Summit. The only business relationship Penske had with Summit, as shown by the evidence, was the leasing of its truck, and no more is shown than that each only had an interest in its own business operations. Absent contractual obligations or evidence indicating otherwise, neither defendant was involved in a joint venture with another, so as to support any additional basis of liability.

Moreover, in the separate statement prepared by all defendants to support their joint motion for summary adjudication, the only admission of liability under respondeat superior is made by the employer Jeld-Wen/Summit (not the owner/leasing company Penske). There is simply no basis on this record to entitle Penske to the same treatment as the employer in this factual context, for purposes of applying the rules of *Armenta, supra,* 42 Cal.2d 448, in this writ proceeding.

Further, the record is incomplete on the details of the lease between Summit and Penske. It is unknown at this point whether the lease terms grant implied permission generally allowing Summit's employees, like Solis, to drive the truck for work-related purposes. Because Penske owned the truck, and it is likely that the lease terms provided implied permission for Summit's "third party" employees to drive the truck, Penske may eventually be held liable under Vehicle Code section 17150.[11] However, because Penske has not shown any entitlement to summary adjudication in its favor on the grounds offered, it would be premature for us to address the issues raised by plaintiffs concerning the effect of Vehicle Code section 17150 et seq. on any future judgment in this case. The petition is denied as to Penske.

---

[11] Vehicle Code section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner." The amount recoverable under section 17150 is "limited to the amount of fifteen thousand dollars ($15,000) for the death of or injury to one person in any one accident and, subject to the limit as to one person, is limited to the amount of thirty thousand dollars ($30,000) for the death of or injury to more than one person in any one accident and is limited to the amount of five thousand dollars ($5,000) for damage to property of others in any one accident." (Veh. Code, § 17151.) For a plaintiff to be successful under Vehicle Code section 17150, " '[n]o actual negligence need be shown on the part of the owner . . .' [Citation.]" (*Estate of Gonzalez* (1990) 219 Cal.App.3d 1598, 1603 [269 Cal.Rptr. 68].) Rather, " 'the liability which [section 17150] imposes upon the owner of a motor vehicle is predicated upon a theory of imputed negligence in cases where the principle of *respondeat superior* is inapplicable.' [Citation.]" (*Id.* at pp. 1603–1604.)

## DISPOSITION

Let a writ of mandate issue ordering the superior court to: (1) vacate that portion of its order denying Jeld-Wen/Summit's motion for summary adjudication, and (2) enter a new order granting Jeld-Wen/Summit's motion for summary adjudication on the negligent entrustment theory. In all other respects the petition is denied. The stay previously issued is vacated. The parties shall bear their own costs in this writ proceeding.

Haller, J., and Aaron, J., concurred.

A petition for a rehearing was denied August 29, 2005, and the petition of real parties in interest for review by the Supreme Court was denied October 19, 2005. Kennard, J., did not participate therein.