Filed 9/27/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MO GHEZAVAT et al.,<br><br>　　　Plaintiffs and Respondents,<br><br>v.<br><br>DAVID RICHARD HARRIS,<br>　　　Defendant and Appellant. | A154405<br><br>(Contra Costa County<br>Super. Ct. No. CIVMSC13-00167) |

　　　In this wrongful death action arising from a motor vehicle collision, the decedents' survivors sued John Harris,[1] and John's father, David Richard Harris, who co-owned the truck John was driving. David appeals from the judgment entered against him, after the jury found him liable on a negligent entrustment theory. We affirm.

**BACKGROUND**

　　　On November 7, 2011, John suffered a seizure while driving a Toyota Tacoma truck and struck a car occupied by Ellie Pirdavari and Mahin Dowlati. Pirdavari and Dowlati were killed. It was stipulated that, as a result of his seizure, John was unable to brake or steer; that he was negligent; and that his operation of the truck was the sole cause of the collision.

　　　The truck John drove was jointly owned by John and David. When they purchased the truck, in 2005, John was 26 years old. He paid the down payment, and

---

　　　[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts A.4., B., and C. of the Discussion.

　　　[1] We use first names for clarity when referring to individual members of the Harris family.

David co-signed the loan.  Before the loan was paid off, in 2009, David made some of the payments.  The truck was registered in both John's and David's names.  David paid for its insurance and registration.  However, John had sole possession of the keys and was the only driver.

David was aware, by no later than June 2011, that John suffered from a seizure disorder.  In particular, David knew that John suffered a grand mal seizure, in June 2011 on a Bay Area Rapid Transit (BART) train, and that John lost consciousness and control of his body and was taken to the hospital.  Within days thereafter, David researched grand mal seizures and learned such seizures could involve lost control and an epileptic fit for a period of time.  On July 30, 2011, John suffered a second grand mal seizure on a BART train.

David testified he did not know if John continued to drive after the June 2011 seizure but believed it was possible.  David took no action to dissuade John from driving, such as canceling the Tacoma's insurance.  David considered removing himself from the registration in 2009 to avoid being accountable for John's use of the truck, but he did not follow through.

The decedents' survivors, Mo Ghezavat, Shadeh Ghezavat, Ali Ghezavat, Haleh Pirdavari, and Leila Pirdavari (collectively, Plaintiffs) sued John and David for negligence.  As to David, the Plaintiffs' theory of liability was negligent entrustment of the jointly owned Tacoma.  Returning special verdicts, the jury found David knew or should have known that John was "incompetent or unfit to drive"; that David permitted John to drive the Tacoma; and that David's permitting John to drive the Tacoma was a substantial factor in causing Pirdavari's and Dowlati's deaths.  The jury allocated 90 percent of fault to John and 10 percent to David.  The trial court entered a judgment in Plaintiffs' favor against David for $388,400.

## DISCUSSION

### A.

David challenges the trial court's jury instruction regarding negligent entrustment, contending the trial court erred by denying his requests to supplement Judicial Council of California Civil Jury Instructions (CACI) No. 724.  We disagree.

### 1.

We review jury instructions de novo.  (*Mize-Kurzman v. Marin Cmty. College Dist*. (2012) 202 Cal.App.4th 832, 845.)  "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence."  (*Soule v. General Motors Corp*. (1994) 8 Cal.4th 548, 572.)  However, " '[i]nstructions should state rules of law in general terms and should not be calculated to amount to an argument to the jury in the guise of a statement of law.  [Citations.]  Moreover, it is error to give, and proper to refuse, instructions that unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition [citations.]' "  (*Major v. Western Home Ins. Co*. (2009) 169 Cal.App.4th 1197, 1217.)  A trial court may refuse to give a requested instruction if the subject matter is adequately covered by the other instructions.  (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1189, fn. 11.)

Negligent entrustment is a common law liability doctrine, which arises in numerous factual contexts.  (*Jeld-Wen, Inc. v. Superior Court* (2005) 131 Cal.App.4th 853, 862-863.)  In cases involving negligent entrustment of a vehicle, liability " 'is imposed on [a] vehicle owner or permitter because of his own independent negligence and not the negligence of the driver.' "  (*Syah v. Johnson* (1966) 247 Cal.App.2d 534, 539 (italics omitted), disapproved on another ground by *Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1159, fn. 1; accord, *Mettelka v. Superior Court* (1985) 173 Cal.App.3d 1245, 1248 (*Mettelka*).)  " 'Liability for the negligence of the incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been

3

known by the owner.' " (*Syah,* at p. 539; accord, Rest. 2nd Torts, § 308 ["It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others"].)

**2.**

The jury was given CACI No. 724 (omitting the element of the driver's negligence because the parties stipulated that John was negligent): "Plaintiffs . . . claim that [Pirdavari] and [Dowlati] were harmed because [David] negligently *permitted* [John] to use [David]'s vehicle. To establish this claim, plaintiffs must prove all of the following: That [David] was an owner of the vehicle operated by [John]; that [David] knew or should have known, that [John] was incompetent or unfit to drive the vehicle; that [David] *permitted* [John] to drive the vehicle; and, that [John] was incompetent or unfit to drive was [*sic*] a substantial factor in causing harm to [Pirdavari] and [Dowlati]." (Italics added.) David requested four supplemental special instructions, which the trial court rejected, concluding CACI No. 724 was sufficient.

**3.**

David argues that CACI No. 724 does not adequately define "permitted" and necessitated supplemental instruction making clear that, in order to be liable, David must have had the power to deny John the use of the Tacoma. We conclude CACI No. 724 adequately covered the point.

David's first proposed special instruction reads: "In order for you to find that [David] permitted [John] to drive the Toyota Tacoma at the time of the accident, you must find that [David] had power over the use of the Toyota Tacoma by [John] and that [John] drove the Toyota Tacoma at the time of the accident with the express or implied consent of [David.]" David also requested a second proposed special instruction: "When determining whether [David] controlled [John's] use of the vehicle involved in the accident, you must determine whether [John] was entitled to possess the vehicle at the time of the accident only by the consent of [David] and that [David] had a reason to

4

believe that by withholding consent, he could prevent [John] from using the vehicle." After the jury began deliberating and requested a definition of "permit" as used in the special verdict's second question, David renewed his request for his first proposed special instruction. However, the trial court again determined further definition was not required.

David contends his first proposed instruction follows the law as described in *Mettelka, supra,* 173 Cal.App.3d 1245. The *Mettelka* court allowed amendment of a complaint to allege negligent entrustment against a car's co-owner. (*Id*. at pp. 1246-1247, 1250.) The plaintiff alleged a father jointly owned a car with his driving son, lived with his son, and facilitated the son's use of the car " 'by providing funds to purchase and maintain the vehicle and the insurance.' " (*Id.* at p. 1247.) The plaintiff also alleged the father " ' had actual power over the use of the vehicle by [his son]," that the son operated it with his father's express or implied permission, and that the father knew his son was an unsafe driver. (*Ibid*.)

The *Mettelka* court rejected the father's argument that a negligent entrustment cause of action is barred in the co-ownership situation "because both co-owners had the right to use the vehicle" and "neither needed permission from the other to use it." (*Mettelka, supra,* 173 Cal.App.3d at pp. 1248-1250.) The court explained: "[T]he mere fact of co-ownership does not prevent one co-owner from controlling use of the vehicle by the other co-owner. Thus, where . . . plaintiff alleges that one co-owner had power over the use of the vehicle by the other and that the negligent co-owner drove with the express or implied consent of such controlling co-owner, who knew of the driver's incompetence, the basis for a cause of action for negligent entrustment has been stated." (*Id*. at p. 1250.)

*Mettelka, supra*, 173 Cal.App.3d at pages 1249 and 1250, relied on *Krum v. Malloy* (1943) 22 Cal.2d 132, in which our Supreme Court stated: "*It is true that the power to permit is the correlative of the power to forbid* [citation], and that each owner of property in common is entitled to possess and use the whole property [citation]. It is also true that the possession of one co-owner is regarded as possession for all [citation], but

5

none is entitled to a possession or usage which excludes for any period of time a like possession or usage by his co-owners [citations]. . . . A co-owner, therefore, of an automobile, who desired its exclusive possession and usage for a time, would need the permission, express or implied, of his co-owners to that end." (*Krum, supra*, 22 Cal.2d at p. 135, italics added.) "In the absence of other evidence upon the issue, an inference normally would arise, upon proof of co-ownership and use of personal property by one co-owner, that such usage was lawful and with the consent of the absent co-owner, but this inference would not be conclusive. . . . It would scarcely be a reasonable inference (from evidence showing merely the fact of co-ownership and a single, isolated usage) that one co-owner of an automobile had consented to the operation of the common property by another co-owner who did not possess an operator's license, or who was a four-year-old infant, a known imbecile, a prisoner who had escaped without the knowledge of the co-owner, or utterly blind. In other words, *it is a question of fact* in cases of co-ownership, as it is in cases of single ownership, *whether the operation of an automobile is with or without the consent*, express or implied, of an owner who is not personally participating in such operation." (*Id.* at pp. 135-136, italics added.)

*Krum* and *Mettelka* make clear that "*the power to permit is the correlative of the power to forbid.*" (*Krum, supra,* 22 Cal.2d at p. 135; *Mettelka, supra*, 173 Cal.App.3d at p. 1249.) CACI No. 724 adequately explained to the jury that David was not liable for negligent entrustment if David did not permit John's use. No further clarification was required. The trial court properly refused to give David's special instructions because they are argumentative and unduly emphasize his theory of the case. David's counsel appropriately argued to the jury that "[t]o permit something you have to have the ability to say 'no' " and that David had no power to forbid or control John's use of the Tacoma. But neither *Mettelka* nor *Krum* compelled the trial court to give the special instructions David proposed.

**4.**

David also contends the trial court erred by refusing a special instruction on causation. John testified that, if he had been unable to continue making payments on the

6

Tacoma, he would have "needed to sell" it and "needed to get a different vehicle with that money." Relying on this testimony, David insists the trial court erred in refusing the following special instruction: "In order to find that the actions of [David] were a substantial factor in the causing of harm to Plaintiffs, you must determine that in the absence of the vehicle involved in the accident, [John] would not have had ready access to another vehicle."

In a negligence action, the test for causation is whether a cause is "a substantial factor in bringing about the injury." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968-969.) The substantial factor test "generally produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct." (*Id.* at p. 969.) "[A] force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor." (*Ibid.*) "If the actor's wrongful conduct operated concurrently with other contemporaneous forces to produce the harm, it is a substantial factor, and thus a legal cause, if the injury, or its full extent, would not have occurred but for that conduct." (*In re Ethan C.* (2012) 54 Cal.4th 610, 640.)

Here, the trial court adequately conveyed this law to the jury. The jury was told that it could not find David liable for wrongful death without finding his negligence "was a substantial factor in causing plaintiffs' harm." The trial court also defined "substantial factor" for the jury, in the language of CACI No. 430: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor, it doesn't have to be the only cause of the harm. *Conduct is not a substantial factor in causing harm, if the same harm would have occurred . . . without that conduct*." (italics added.)

The trial court did not err in rejecting David's argumentative and unnecessary special instruction. *Talbott v. Csakany* (1988) 199 Cal.App.3d 700 does not compel a contrary conclusion.

7

**B.**

David also challenges the sufficiency of the evidence to support the jury's negligent entrustment verdict. He contends his permission for John to use the Tacoma cannot be inferred because there was no evidence he retained power to control its use after learning of John's 2011 grand mal seizures. He also challenges the sufficiency of the evidence supporting causation.

We review the jury's findings for substantial evidence. (*Scheff v. Roberts* (1950) 35 Cal.2d 10, 12-13.) We resolve all evidentiary conflicts and presume the jury drew all reasonable inferences in favor of the judgment. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632.) "The ultimate determination is whether a reasonable trier of fact could have found for the respondent based on the whole record. [Citation.] While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding." (*Id.* at pp. 1632-1633, italics & fns. omitted.)

Here, substantial evidence supports a jury finding that David permitted John to drive the truck they co-owned. David helped John buy the Tacoma for John's use, paid for its insurance, registration and repair, and held title jointly with John. Even if the jury concluded David did not have actual or constructive knowledge John was unfit to drive until June 2011, the jury could reasonably infer David thereafter implicitly permitted John's continued use of the Tacoma because David failed to take any action to dissuade John from driving, to take the keys, to cancel the Tacoma's insurance (for which he paid), or to remove his name from the car's registration and title. (See *Mettelka, supra,* 173 Cal.App.3d at p. 1250 [joint owner's negligent entrustment liability may be based on implied or express permission].)

Furthermore, John stopped driving for a period of time in 2009 when his driver's license lapsed. During this time, John rode his bicycle exclusively instead of purchasing another vehicle. David helped John renew his license by obtaining the necessary forms. John stopped driving again in 2010 after the truck was damaged in an unrelated collision.

8

John resumed driving only after David paid for the Tacoma's repair. Between 2009 and 2011, John's parents paid most of his living expenses. Taking all of these circumstances together, the jury could reasonably infer that, had David cancelled the insurance on the Tacoma or taken other measures to keep John from driving the truck, John would have stopped driving. This inference supports the jury's findings on both permission and causation. (Cf. *Fremont Comp. Ins. Co. v. Hartnett* (1993) 19 Cal.App.4th 669, 673, 675 [substantial evidence supports implied permission finding when mother purchased car used by adult son and later, after learning car was not running safely, took no affirmative steps to deny son access to car stored in her yard]; *Casey v. Fortune* (1947) 78 Cal.App.2d 922, 926 ["From the fact that she took no positive steps to prevent the use of the car by Robert under the circumstances, it could reasonably be inferred that she impliedly consented to its use"].)

Had the jury believed David's testimony regarding his inability to control his adult son's use of the Tacoma, it might reasonably have reached a different conclusion. (See *Krum, supra*, 22 Cal.2d at p. 135 ["In the absence of other evidence upon the issue, an inference normally would arise, upon proof of co-ownership and use of personal property by one co-owner, that such usage was lawful and with the consent of the absent co-owner"].) But the jury was not compelled to believe David. This is not a case where we can decide the question of negligence as a matter of law. (See *Fremont Comp. Ins. Co.*, *supra*, 19 Cal.App.4th at p. 674-675 [when trier of fact draws "inference of implied permission from conflicting evidence, and such inference is reasonable and supported by substantial evidence, the appellate court may not interfere with the trier's factual conclusion of permissive use"].) Substantial evidence supports the verdict.

## C.

Finally, David contends the trial court abused its discretion by admitting evidence that David owned a construction company. He argues the evidence was unduly prejudicial (Evid. Code, § 352) because it informed the jury "[David] had plenty of money to pay for whatever verdict they saw fit to award against him." However, David did not designate his motions in limine on this issue, or the Plaintiffs' opposition briefs,

for inclusion in the clerk's transcript.  David has forfeited this point by failing to designate an adequate record and by presenting only conclusory argument.  (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [courts are not required "to examine undeveloped claims, nor to make arguments for parties"]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 [issue resolved against appellant when inadequate record provided].)

### DISPOSITION

The judgment is affirmed.  Plaintiffs are entitled to their costs on appeal.

_____

BURNS, J.

WE CONCUR:

_____

JONES, P. J.

_____

NEEDHAM, J.

A154405

Superior Court of Contra Costa County, No. CIVMSC1300167, Barry P. Goode, Judge.

The Dolan Law Firm, Christopher B. Dolan and Jeremy M. Jessup; Law Office of J. Michael Brown, J. Michael Brown, for Plaintiffs and Respondents.

Samuelson, Wilson & Roe, Charles R. Roe, for Defendant and Appellant David Richard Harris.